1
2
3
4
5

Clifford J. Bourgeois
6460 Convoy Ct., Spc 220
San Diego, CA  92117
joebourg62@aol.com
(858) 229-6016



FILED

NOV  4 2015

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          7.b          DEPUTY

6
7
8
9

# district court of the United States
## at the Southern district of California

10
11
12
13
14
15
16
17

| | |
|---|---|
| **Clifford J Bourgeois,**<br>*Plaintiff*<br><br>**vs.**<br><br>**OCWEN Loan Servicing, LLC, et al**<br>*Defendants* | **Case No. 15-cv-1655-GPC-BLM**<br><br>**First Amended Claim for Damages**<br><br>**Trial by Jury Demanded** |

18
19
20
21
22
23
24
25
26
27
28

## NATURE OF THIS CLAIM/COMPLAINT

1.   The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, *15 USC 1692 et seq.*  (FDCPA), to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection

1   practices are not competitively disadvantaged, and to promote consistent
2   State action to protect consumers against debt collection abuses.
3   **2.**   The California legislature has determined that the banking and credit system
4   and grantors of credit to consumers are dependent upon the collection of just
5   and owing debts and that unfair or deceptive collection practices undermine
6   the public confidence that is essential to the continued functioning of
7   the banking and credit system and sound extensions of credit to consumers.
8   The Legislature has further determined that there is a need to ensure
9   that debt collectors exercise this responsibility with fairness, honesty
10  and due regard for the debtor's rights and that debt collectors must be
11  prohibited from engaging in unfair or deceptive acts or practices.
12  The California legislature wrote The Rosenthal Fair Debt Collections Act,
13  *California Civil Code (CCC) 1788, et seq.* (Rosenthal Act).
14  **3.**   The Congress makes the following findings: (1) The banking system is
15  dependent upon fair and accurate credit reporting. Inaccurate credit reports
16  directly impair the efficiency of the banking system, and unfair credit
17  reporting methods undermine the public confidence which is essential to the
18  continued functioning of the banking system. (2) An elaborate mechanism
19  has been developed for investigating and evaluating the credit worthiness,
20  credit standing, credit capacity, character, and general reputation of
21  consumers. (3) Consumer reporting agencies have assumed a vital role in
22  assembling and evaluating consumer credit and other information on
23  consumers. (4) There is a need to insure that consumer reporting agencies
24  exercise their grave responsibilities with fairness, impartiality, and a respect
25  for the consumer's right to privacy.
26  (b)Reasonable procedures.  It is the purpose of this title to require that
27  consumer reporting agencies adopt reasonable procedures for meeting the
28  needs of commerce for consumer credit, personnel, insurance, and other

information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title.  Congress enacted the Fair Credit Reporting Act, *15 USC 1681 et seq.*  (FCRA) to protect consumers from inaccurate credit reporting.

4.  With passage of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Congress established the Consumer Financial Protection Bureau (CFPB) "to protect consumers from abusive financial services practices" and vested the CFPB with authority to enforce the FDCPA and the FCRA and to prescribe rules implementing the Acts.

5.  The CFPB is the first agency ever to have general rulemaking authority under the FDCPA and the FCRA.

6.  Effective July 1, 2013, California's Department of Corporations and the Department of Financial Institutions merged to form the Department of Business Oversight (DBO).  As such, all businesses licensed in California are now governed by the DBO.

7.  On February 25, 1863, President Abraham Lincoln signed into law the National Currency Act of 1863.  This Act created the Office of the Comptroller of the Currency (OCC), under the U.S. Department of the Treasury, with full rule-making and enforcement power to regulate all Banking activity in the United States.

8.  This Claim for Damages is brought by an individual Plaintiff against all Defendants for actual, statutory, punitive damages, costs and attorney's fees pursuant to the FDCPA, the Rosenthal Act and the FCRA as a result of all Defendants' conduct in the collection of an alleged consumer debt in default for one year prior to being assigned to Defendants for collection.

9.  Plaintiff seeks to recover monetary damages and any other relief for Defendants' violations of the FDCPA, the Rosenthal Act and the FCRA as a

1   result of all Defendants' conduct in the collection of an alleged consumer

2   debt in default for one year prior to being assigned to Defendants for

3   collection.

## JURISDICTION AND VENUE

4

5   **10.**   This court has jurisdiction pursuant to Article 3 of the Constitution, *15 USC*

6   *1692(k)d, 28 USC 1331, 15 USC 1681p and CCC 1788.30f.*

7   **11.**   All conditions precedent to the bringing of this action have been performed.

8   **12.**   Plaintiff resides in San Diego County, California.  Defendants' conduct

9   causing this claim occurred in San Diego County, California.

10   **13.**   Venue is proper in the southern district of California.

## PARTIES & DEFINITIONS

11

12   **14.**   The Plaintiff in this lawsuit is Clifford J. Bourgeois, a natural person

13   residing in San Diego County, California and is therefore a **person** as

14   defined by *CCC 1788.2(g)* of the Rosenthal Act.

15   **15.**   Plaintiff is a natural person allegedly obligated to pay a debt to Defendants,

16   therefore, Plaintiff is a **consumer** as defined by *15 USC 1692(a)3.*

17   **16.**   Plaintiff is an individual, therefore, Plaintiff is a **consumer** as defined by *15*

18   *USC 1681a(c).*

19   **17.**   Defendants seek collection of an alleged obligation of a consumer to pay

20   money arising out of a transaction in which the money, property, insurance

21   or services which are the subject of the transaction are primarily for

22   personal, family, or household purposes.  As such, this is a **debt** as defined

23   by *15 USC 1692a(5)*.  Furthermore, Defendants seek money, property or

24   their equivalent which is alleged to be due or owing from a natural person,

25   the Plaintiff, to another person(s), the Defendants.  As such, this is a **debt** as

26   defined by *CCC 1788.2(d).*

27   **18.**   Defendants seek money, property or their equivalent which is alleged to be

28   due or owing from a natural person, the Plaintiff, by reason of a consumer

1   credit transaction. As such, this is a **consumer debt** as defined by *CCC*

2   *1788.2(e)*.

3   19.   Plaintiff is a natural person whom Defendants seek to collect a consumer

4   debt which is alleged to be due and owing to Defendants, therefore, Plaintiff

5   is a **debtor** as defined by *CCC 1788.2(h).*

6   20.   Defendant **OCWEN Loan Servicing, LLC** (OCWEN), a subsidiary of

7   **OCWEN FINANCIAL CORPORATION** (OCN), is located at 1661

8   Worthington Rd., #100, West Palm Beach, FL 33409 and at all times

9   relevant to this action, has been doing business in and under the laws of

10   California and the laws of the United States. As such, OCWEN is governed

11   by the DBO and the CFPB. OCWEN is a properly licensed limited liability

12   company; a corporation. As such, they are a **person** as defined by *CCC*

13   *1788.2(g)* and *15 USC 1681a(b).*

14   21.   OCWEN's primary business model *"involves the collection and remittance*

15   *of principal and interest payments received from borrowers.....on behalf of*

16   *investors or other servicers"*, as evidenced by **Exhibit A**, a copy of page 5

17   of OCN's 2015 Annual Report. As such, OCWEN uses any instrumentality

18   of interstate commerce or the mails in a business, the principle purpose of

19   which is the collection of debts and who regularly collects or attempts to

20   collect, directly or indirectly, debts owed or due or asserted to be owed or

21   due another. Therefore, OCWEN is a **debt collector** as defined by *15 USC*

22   *1692a(6)*. Furthermore, OCWEN, in the ordinary course of business,

23   regularly, on behalf of himself or herself or others, engages in debt

24   collection. Therefore, OCWEN is a **debt collector** as defined by *CCC*

25   *1788.2(c)*.

26   22.   OCWEN claims to be a loan servicer for various Real Estate Mortgage

27   Investment Conduits (REMIC's). Loan Servicer's are governed by the

28   Pooling and Servicing Agreement (PSA) as provided to the Securities and

1    Exchange Commission (SEC) by the filing and creation of the REMIC's
2    Prospectus, as well as the CFPB.  In keeping with their business model,
3    OCWEN acquires or purchases defaulted consumer debt in the form of
4    servicing rights involving portfolios of defaulted mortgage loans, as
5    evidenced by **Exhibit A**, for the purpose of converting a defaulted loan into
6    a performing loan using the Home Affordable Modification Program
7    (HAMP), a federal program under the U.S. Department of the Treasury.
8    OCWEN acquired the servicing rights of Plaintiff's consumer debt **one year**
9    **after** default, as evidenced by **Exhibit B**, and *never* engaged in collecting or
10   attempting to collect any debt owed or due or asserted to be owed or due
11   another to the extent such activity..(iii) concerns a debt which was not in
12   default at the time it was obtained by such person.  As such, OCWEN is a
13   **debt collector** as they fail the Loan Servicer exception of *15 USC*
14   *1692a(6)F(iii)*.

15   23.  OCWEN, a person, regularly and in the ordinary course of business
16        furnishes information to the major consumer reporting agencies (CRA's)
17        about their transactions or experiences with consumers.  As such, OCWEN
18        is a **furnisher of information** as defined by *15 USC 1681s(2)*.

19   24.  Defendant **Amit Mishra** (Amit) is a natural person and is a **person** as
20        defined by *CCC 1788.2(g)*.  Amit is employed by OCWEN and uses any
21        instrumentality of interstate commerce or the mails in a business, the
22        principle purpose of which is the collection of debts and who regularly
23        collects or attempts to collect, directly or indirectly, debts owed or due or
24        asserted to be owed or due another.  Therefore, Amit is a **debt collector** as
25        defined by *15 USC 1692a(6)*.  Furthermore, Amit, in the ordinary course of
26        business, regularly, on behalf of himself or herself or others, engages in debt
27        collection.  Therefore, Amit is a **debt collector** as defined by *CCC*
28        *1788.2(c)*.

25. Defendant **Ahmad Ansari** (Ahmad) is a natural person and is a **person** as defined by *CCC 1788.2(g)*. Ahmad is employed by OCWEN and uses any instrumentality of interstate commerce or the mails in a business, the principle purpose of which is the collection of debts and who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Therefore, Ahmad is a **debt collector** as defined by *15 USC 1692a(6)*. Furthermore, Ahmad, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. Therefore, Ahmad is a **debt collector** as defined by *CCC 1788.2(c)*.

26. Defendant **Tammy Versluis** (Tammy) is a natural person and is a **person** as defined by *CCC 1788.2(g)*. Tammy is employed by OCWEN and uses any instrumentality of interstate commerce or the mails in a business, the principle purpose of which is the collection of debts and who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Therefore, Tammy is a **debt collector** as defined by *15 USC 1692a(6)*. Furthermore, Tammy, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. Therefore, Tammy is a **debt collector** as defined by *CCC 1788.2(c)*.

27. Defendant **Western Progressive, LLC** (Western), a subsidiary of **ALTISOURCE PORTFOLIO SOLUTIONS, SA** (ASPS), is located at 30 Corporate Park, Ste. 450, Irvine, CA  92606 and at all times relevant to this action, has been doing business in and under the laws of California and the laws of the United States. As such, Western is governed in California by the DBO and the CFPB. Western is a properly licensed limited liability company. As such, they are a **person** as defined by *CCC 1788.2(g)*.

28. Western's primary business is providing foreclosure trustee services for clients in California, Nevada and Arizona, as evidenced by **Exhibit C**, a copy of the ASPS webpage offering Trustee Services. As such, Western uses any instrumentality of interstate commerce or the mails in a business, the principle purpose of which is the collection of debts and who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Additionally, Western uses any instrumentality of interstate commerce or the mails in a business, the principle purpose of which is the enforcement of security interests. Western's relationship with OCWEN is a common agent and not a bona fide fiduciary and as such, does not satisfy the *15 USC 1692a(6)F(i)* exemption as interpreted by the CFPB in **Exhibit AD** of *PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS* previously filed into the court. Therefore, Western is a **debt collector** as defined by *15 USC 1692a(6)*. Furthermore, Western, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. Therefore, Western is a **debt collector** as defined by *CCC 1788.2(c)*.

29. Defendant **Law Offices of Les Zieve** (LOLZ) is located at 30 Corporate Park, Ste. 450, Irvine, CA 92606 and at all times relevant to this action, has been doing business in and under the laws of California and the laws of the United States. As such, LOLZ is governed in California by the DBO and the CFPB. LOLZ is a properly licensed corporation. As such, they are a **person** as defined by *CCC 1788.2(g)*.

30. LOLZ employs attorney's and staff whose primary business is providing foreclosure services, including Bankruptcy representation, for clients in California and four other western states, as evidenced by **Exhibit D-1**, a copy of the LOLZ webpage explaining their Practice Areas. As such, LOLZ uses any instrumentality of interstate commerce or the mails in a business,

the principle purpose of which is the collection of debts and who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Therefore, LOLZ is a **debt collector** as defined by *15 USC 1692a(6)*. Furthermore, LOLZ, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. Therefore, LOLZ is a **debt collector** as defined by *CCC 1788.2(c)*.

31. Among LOLZ's clients is OCWEN, as evidenced by **Exhibit D-2**, a copy of the LOLZ webpage titled "Our Clients."

32. LOLZ's relationship with Western is interesting. As noted above, they both share the same address. Plaintiff contacted Western at 866-960-8299, the phone number listed next to their address. Western's employee stated that they do not have an office in California, only in Atlanta, GA. It is clear that LOLZ and Western are one in the same; the alter ego of each other.

33. The terms –
    A) *Dunning letter, an accounting term also used by the CFPB and many courts, means a letter sent to a customer, stating that the customer is overdue in paying an account receivable to the sender.*
    B) *Debt validation letter means a request from the alleged debtor to the debt collector to provide account-level documentation from the original creditor that substantiates the amount owed is correct and valid. Also known as a bill of particulars or a full accounting starting from the time the debt started and showing all debits and credits of the account. Often used in combination with a debt dispute letter to a debt collector.*

## BACKGROUND

34. Plaintiff obtained a residential home loan, identified as number ending with 2507, and legal title therein from Accredited Home Lenders, Inc. (Accredited) for which a deed of trust (DOT) was recorded against Plaintiff's real property located at 1280 Shari Way, El Cajon, CA 92019 on or about April 17, 2003 in the amount of $150,000.00.

35. Sometime later, Chase Home Finance (Chase) took over as the servicer of the loan. In 2011, Plaintiff requested information to Chase about a loan modification (loan mod). Chase explained that if we default on the loan for three months, we could easily get a HAMP loan mod, therefore, Plaintiff stopped making payments, causing a default date of April 2, 2011 with the expectation of getting a loan mod.

36. Over the next several months, Chase came up with every reason to delay the HAMP application. As a result, Plaintiff filed a dispute with Chase, including, but not limited to, the validity of the principle amount and the inaccuracies regarding the transfer of the DOT. Plaintiff also filed disputes with the CRA's, as well as many complaints with the OCC. Chase never did provide a bill of particulars to Plaintiff or the OCC.

37. On April 13, 2011, Chase, including their successors and assigns, entered into a Stipulation and Consent Order (SCO) with the OCC including, but not limited to, correcting their improper practices regarding residential mortgage servicing, evidenced by **Exhibit E**.

38. On March 12, 2012, Chase sold/assigned the servicing rights to OCWEN effective April 2, 2012, as evidenced by **Exhibit F**. As such, OCWEN knew or should have known that Chase lacked any accurate account-level paperwork and files due to the OCC's investigation and SCO.

39. On April 17, 2012, Plaintiff received a dunning letter, dated April 11, 2012, from OCWEN demanding payment for an alleged debt of loan number ending with 0797 (loan 0797) in the amount of $139,142.25, evidenced by **Exhibit B**.

40. On April 27, 2012, Plaintiff sent a Dispute/Debt Validation letter, including a request for all paperwork and a full accounting of loan 0797, to OCWEN, which OCWEN received on April 30, 2012, as evidenced by **Exhibit G**.

41. Plaintiff also disputed the OCWEN loan 0797 trade lines with the CRA's, as evidenced by **Exhibit H**.

42. Although never validating the alleged debt, Western and LOLZ, on behalf of OCWEN, on July 27, 2012, filed into the public record a dunning letter demanding payment of an alleged past due debt amount of $20,147.05 for loan 0797 and never stated the disputed status, as evidenced by **Exhibit I-1**.

43. On November 26, 2012, Western and LOLZ filed into the public record a document titled "Notice of Trustee's Sale," which disclosed an unvalidated and disputed debt amount due of $148,964.49, as evidenced by **Exhibit I-2**.

44. Due to OCWEN, Western and LOLZ's blatant conduct of refusing to comply with the FDCPA and the Rosenthal Act, Plaintiff's ex-wife, Susan Bourgeois (Susan,) had no choice but to, on December 6, 2012, file Bankruptcy as the only way to stop the OCWEN machine and make their behavior accountable to a judge, as evidenced by **Exhibit J**.

45. On December, 14, 2012, as OCWEN's foreclosure attorney, LOLZ filed a notice of appearance into the bankruptcy case listing OCWEN as a creditor, as evidenced by **Exhibit K-1**.

46. On January 11, 2013, Plaintiff sent a dispute/debt validation letter to LOLZ and Western, as evidenced by **Exhibit K-2**.

47. OCWEN never submitted a Proof of Claim (POC) and the BK Trustee issued his final report on February 24, 2014, as evidenced by **Exhibit L-1**.

48. On February 26, 2014 and over one year late, OCWEN submitted a POC, which did not include any account-level documentation.

49. On March 11, 2014, Susan filed an Objection to Claim, as evidenced by **Exhibit L-2**.

50. On March 13, 2014, Plaintiff sent another dispute/debt validation letter to OCWEN, as evidenced by **Exhibit L-3**.

51. On May 21, 2014, Nichole Glowin (Glowin), employed by Wright, Finlay & Zak, LLP, (WFZ) entered into the BK, as evidenced by **Exhibit M-1**, and filed an expanded version of OCWEN's POC on OCWEN's behalf, as well as another version on behalf of alleged creditor Wells Fargo Bank, NA (WFB) for the same alleged debt, as evidenced by **Exhibits M-2 and M-3**.

52. On May 27, 2014, Plaintiff sent a dispute/debt validation letter to WFZ and Glowin, as evidenced by **Exhibit M-4**.

53. On June 6, 2014, the BK Court denied OCWEN and WFB's claims, as evidenced by **Exhibit N**.

## FACTUAL ALLEGATIONS

54. LOLZ and Western, for the past 12 months, continues to communicate with the public, as evidenced by **Exhibit J-1**, without Plaintiff's permission, in connection with the collection of an alleged debt. Furthermore, LOLZ and Western have failed to note that this credit information of Plaintiff's debt is, and has been since April of 2012, disputed, as evidenced by **Exhibit J-2**. Consequently, LOLZ and Western have each violated *15 USC 1692c(b)* and *15 USC 1692e(8)*. As these law are incorporated in the Rosenthal Act, LOLZ and Western have each violated *CCC 1788.17* twice.

55. On November 21, 2014, Defendants OCWEN and Amit sent Plaintiff a "Resource" letter to collect on loan 0797, as evidenced by **Exhibit O-1**. In response, on January 26, 2015, Plaintiff sent yet another dispute/debt validation letter to Defendants OCWEN and Amit, as evidenced by **Exhibit O-2**. On February 11, 2015, Anne Issac from OCWEN acknowledged receipt of the dispute, as evidenced by **Exhibit O-3**. The cover letter clearly indicates that Defendants OCWEN and Amit are continuing collection activity of a disputed debt. Consequently, Defendants OCWEN and Amit have each violated *15 USC 1692g(b)*. As this law is incorporated in the

1   Rosenthal Act, Defendants OCWEN and Amit have each violated *CCC*
2   *1788.17*.

3   56.  On February 27, 2015, Defendants OCWEN and Amit sent Plaintiff a
4        HAMP application for loan 0797, as evidenced by **Exhibit Q**, which
5        Plaintiff received in early March of 2015.  The cover letter clearly indicates
6        that Defendants OCWEN and Amit are continuing collection activity of a
7        disputed debt.  Consequently, Defendants OCWEN and Amit have each
8        violated *15 USC 1692g(b)*.  As this law is incorporated in the Rosenthal Act,
9        Defendants OCWEN and Amit have each violated *CCC 1788.17*.

10  57.  On May 12, 2015, Defendant's OCWEN and Ahmad sent Plaintiff a dunning
11       letter titled "Mortgage Assistance Resources," in which, on page five, they
12       demand Plaintiff "to make all mortgage payments when they come due," as
13       evidenced by **Exhibit R-1**.  The letter clearly indicates that Defendants
14       OCWEN and Ahmad are continuing collection activity of a disputed debt.
15       Consequently, Defendants OCWEN and Ahmad have each violated *15 USC*
16       *1692g(b)*.  As this law is incorporated in the Rosenthal Act, Defendants
17       OCWEN and Ahmad have each violated *CCC 1788.17*.

18  58.  On May 15, 2015, Defendant's OCWEN and Ahmad sent Plaintiff a HAMP
19       application for loan 0797, in which, on page 23, they demand Plaintiff "to
20       make all mortgage payments when they come due, as evidenced by **Exhibit**
21       **R-2**.  The letter clearly indicates that Defendants OCWEN and Ahmad are
22       continuing collection activity of a disputed debt.  Consequently, Defendants
23       OCWEN and Ahmad have each violated *15 USC 1692g(b)*.  As this law is
24       incorporated in the Rosenthal Act, Defendants OCWEN and Ahmad have
25       each violated *CCC 1788.17*.

26  59.  On May 20, 2015, Defendant's OCWEN and Ahmad sent Plaintiff a
27       standard dunning letter in which they demand payment of $63,866.51 to
28       bring the account current.  This letter also states that OCWEN has turned

over this matter to LOLZ, as evidenced by **Exhibit R-3**. The letter clearly indicates that Defendants OCWEN and Ahmad are continuing collection activity of a disputed debt. Consequently, Defendants OCWEN and Ahmad have each violated *15 USC 1692g(b)*. As this law is incorporated in the Rosenthal Act, Defendants OCWEN and Ahmad have each violated *CCC 1788.17*.

60. On May 11, 2015, Plaintiff sent a complaint against OCWEN to the CFPB, as evidenced by **Exhibit S-1**, and they opened Complaint number 150521-001477, as evidenced by **Exhibit S-2**.

61. On May 28, 2015, Plaintiff emailed a complaint against OCWEN to the DBO, as evidenced by **Exhibit T-1**, and they opened Complaint number 9989, as evidenced by **Exhibit T-2**.

62. On June 10, 2015, Plaintiff received a response letter from Tammy. The letter contained paperwork as if the Plaintiff had requested a Qualified Written Request (QWR). Tammy included a one-page spreadsheet, as evidenced by **Exhibit U-1**, claiming this validates the debt. This letter does not include any account-level documentation of how the beginning balance of $131,008.00 was calculated, therefore, per her request, I sent her another dispute letter, as evidenced by **Exhibit U-2**. Plaintiff not only disputed her results, but also told her exactly what she should have produced to substantiate the debt. Plaintiff also sent another complaint letter to the DBO to update their investigation, as evidenced by **Exhibit U-3**. Tammy has falsely represented the character and amount of this debt. Consequently, Tammy has violated *15 USC 1692e(2)A*. As this law is incorporated in the Rosenthal Act, Tammy has violated *CCC 1788.17*.

63. On June 16, 2015, Defendant's OCWEN and Ahmad sent Plaintiff another standard dunning letter in which they demand payment of $65,193.27 to bring the account current. This letter, once again, also states that OCWEN

1    has turned over this matter to LOLZ, as evidenced by **Exhibit V-1**. The

2    letter clearly indicates that Defendants OCWEN and Ahmad are continuing

3    collection activity of a disputed debt. Consequently, Defendants OCWEN

4    and Ahmad have each violated *15 USC 1692g(b)*. As this law is

5    incorporated in the Rosenthal Act, Defendants OCWEN and Ahmad have

6    each violated *CCC 1788.17*.

7  **64.**  Also on June 16, 2015, Defendant OCWEN sent Plaintiff a different looking

8    standard dunning letter in which they demand payment of $181,800.68 or, as

9    an alternative, $63,966.51 to bring the account current, as evidenced by

10    **Exhibit V-2**. The letter clearly indicates that OCWEN is dunning Plaintiff

11    for 2 different amounts to bring the account current, thereby misrepresenting

12    the amount of the debt and continuing collection activity of a disputed debt.

13    Consequently, OCWEN has violated *15 USC 1692e(2)A* and *15 USC*

14    *1692g(b)*. As this law is incorporated in the Rosenthal Act, OCWEN has

15    violated *CCC 1788.17* twice.

16  **65.**  On July 23, 2015, Defendant's OCWEN and Ahmad sent Plaintiff another

17    standard dunning letter in which they demand payment of $66,446.53 to

18    bring the account current. This letter states, for the third time, that OCWEN

19    has turned over this matter to LOLZ, as evidenced by **Exhibit W**. The letter

20    clearly indicates that Defendants OCWEN and Ahmad are continuing

21    collection activity of a disputed debt. Consequently, Defendants OCWEN

22    and Ahmad have each violated *15 USC 1692g(b)*. As this law is

23    incorporated in the Rosenthal Act, Defendants OCWEN and Ahmad have

24    each violated *CCC 1788.17*.

25  **66.**  In late January of this year, Plaintiff obtained a copy of his Transunion

26    Credit report showing that OCWEN removed the dispute status of their trade

27    line on their update of January, 5, 2015, as evidenced by **Exhibit P-1**. On

28    October 31, 2015, Plaintiff obtained a "3 in 1" credit report from the three

1    major CRA's, as evidenced by **Exhibit P-2**. OCWEN is very much aware

2    of this dispute, yet their communication to the CRA's failed to report this

3    debt as disputed for the last 10 months. Consequently, OCWEN has 30

4    violations of *15 USC 1692e(8)*. As this law is incorporated in the Rosenthal

5    Act, OCWEN has 30 violations of *CCC 1788.17*.

67. OCWEN has never provided any signed verification, validation or

accounting of any alleged accounts or copy of any signed contract or

agreement for loan 0797. Defendants failed to reinvestigate the alleged

accounts after dispute as required by the FCRA.

68. The amendments to the FCRA made by the Consumer Credit Reporting Act

of 1996 raised the bar of compliance with the law by imposing a higher duty

of furnishers to reinvestigate on the original source providing information to

the credit reporting agencies. Congress clearly intended the furnishers of

credit data to perform a more exacting investigation than merely parroting

their own internal data which the consumer has disputed.

69. By ignoring Plaintiff's timely demands for validation and disputes, in their

avoidance of their legal obligation to reinvestigate and go beyond mere

electronic data obtained by the purchase of unverified and unauthenticated

alleged loan information, OCWEN has violated the clear mandate Congress

intended and enacted under *15 USC 1681s-2(b)*.

70. The fact remains that the FCRA requires a reasonable reinvestigation and a

deletion of inaccurate information from the consumer's credit reports after

said consumer has disputed the information being provided. Not only has

OCWEN failed to comply with *15 USC 1681s-2(b)* by not performing a

reasonable reinvestigation, they have knowingly and willfully continued to

furnish unverified and unauthenticated information to the credit reporting

agencies for the past 24 months. Each month OCWEN furnished

information to the credit reporting agencies without first performing a

reasonable reinvestigation after that reinvestigation has been demanded constitutes a new and separate deliberate violation of the statute. Therefore, OCWEN has 72 violations of *15 USC 1681s-2(b)*.

71. On July 7, 2015, Plaintiff sent Defendants OCWEN, Amit, Ahmad and Tammy a "Notice of Intent to Litigate" as an opportunity to mitigate damages. Plaintiff never received a response.

72. On July 18, 2015, Plaintiff sent, via email, a "Notice of Intent to Litigate" as an opportunity for LOLZ to mitigate damages. After correcting a misunderstanding on the part of LOLZ, they stopped corresponding with Plaintiff.

73. Defendants conduct of multiple violations of Federal and State Laws has and is causing the Plaintiff the following damages:

    a. personal expenses related to seeking remedy in this proceeding

    b. physical injury to Plaintiff resulting in emotional distress, frustration, mental anguish, embarrassment, humiliation and loss of happiness.

    c. a diminished credit score and credit reputation which may hinder Plaintiff's ability to obtain credit in the future.

## COUNT I OF CLAIM
### Violations of the FDCPA
### (Against each Defendant)

74. Plaintiff repeats and re-alleges each and every allegation stated above.

75. Defendants' aforementioned acts constitute numerous and multiple knowing and/or willful violations of the FDCPA.

WHEREFORE, Plaintiff prays for relief and judgment as follows:

    a. Adjudging that all Defendants willfully violated the FDCPA;

    b. Awarding Plaintiff statutory damages, pursuant to *15 USC 1692k*, of $1,000 per Defendant;

c. Awarding Plaintiff actual damages of $1,000,000, Attorney's fees and costs pursuant to *15 USC 1692k.*

Awarding any injunctive or further relief the court deems proper including, but not limited to -

1 – the issuance of an injunction against Defendants to cease collection activity until the alleged debt is properly validated and,

2 – OCWEN removing their Trade Line from the Plaintiff's Credit Reports.

## COUNT II OF CLAIM

## Violations of the Rosenthal Act

### (Against each Defendant)

76. Plaintiff repeats and re-alleges each and every allegation stated above.

77. Defendants' aforementioned acts constitute numerous and multiple knowing and/or willful violations of the Rosenthal Act.

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a. Adjudging that all Defendants willfully violated the Rosenthal Act;

b. Awarding Plaintiff statutory damages, pursuant to *CCC 1788.30b*, of $1,000 per Defendant;

c. Awarding Plaintiff actual damages of $1,000,000, Attorney's fees and costs pursuant to *CCC 1788.*

Awarding any injunctive or further relief the court deems proper including, but not limited to -

1 – the issuance of an injunction against Defendants to cease collection activity until the alleged debt is properly validated and,

2 – OCWEN removing their Trade Line from the Plaintiff's Credit Report.

## COUNT III OF CLAIM

## Violations of the FCRA

### (Against OCWEN)

78. Plaintiff repeats and re-alleges each and every allegation stated above.

79. Defendant OCWEN's aforementioned acts constitute numerous and multiple knowing and/or willful violations of the FCRA.

WHEREFORE, Plaintiff prays for relief and judgment as follows:

    a. Adjudging that OCWEN willfully violated the FCRA;

    b. Awarding Plaintiff statutory damages, pursuant to *15 USC 1681n(a)1(A)*, of $1,000 for each 72 violations totaling $72,000;

    c. Punitive damages pursuant to *15 USC 1681n(a)2.*

    d. Awarding attorney's fees and costs pursuant to *15 USC 1681n(a)3.*

    e. Awarding any injunctive or further relief the court deems proper.

### Demand for a Trial by Jury

Plaintiff demands a Trial by Jury, pursuant to Article 7 of the Constitution.

Respectfully submitted,

Dated: November 4, 2015

_____

Clifford J. Bourgeois, Plaintiff

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Proof of Service

I certify that I have served a copy of **Plaintiff's First Amended Claim with Exhibits** on November 4, 2015 by First Class US Mail to:

| | |
|---|---|
| LAW OFFICES OF LES ZIEVE<br>John C. Steele, Bar No. 179875<br>jsteele@zievelaw.com<br>Ryan K. Woodson, Bar No. 224765<br>rwoodson@zievelaw.com<br>Tanya C. McCullah, Bar No. 279614<br>tmccullah@zievelaw.com<br>30 Corporate Park, Suite 450<br>Irvine, CA 92606<br>Telephone: (714) 848-7920<br>Fax: (714) 908-2615<br><br>Attorneys for Defendant<br>The Law Offices of Les Zieve | Philip Barilovits (SBN 199944)<br>pbarilovits@hinshawlaw.com<br>HINSHAW & CULBERTSON LLP<br>One California Street, 18th Floor<br>San Francisco, CA 94111<br>Telephone: 415-362-6000<br>Facsimile: 415-834-9070<br><br>Attorneys for Defendants<br>OCWEN LOAN SERVICING, LLC,<br>WESTERN PROGRESSIVE, LLC,<br>AHMAD ANSARI, AMIT MISHRA,<br>and TAMMY VERSLUIS |

Clifford J. Bourgeois, Pro Se
6460 Convoy Ct., Spc 220
San Diego, CA 92117
Phone: 858-229-6016
Email: joebourg62@aol.com