1  Philip Barilovits (SBN 199944)
   pbarilovits@hinshawlaw.com
2  HINSHAW & CULBERTSON LLP
   One California Street, 18th Floor
3  San Francisco, CA 94111
   Telephone:  415-362-6000
4  Facsimile:   415-834-9070

5  Attorneys for Defendants
   OCWEN LOAN SERVICING, LLC,
6  WESTERN PROGRESSIVE, LLC,
   AHMAD ANSARI, AMIT MISHRA,
7  and TAMMY VERSLUIS

8

9              **UNITED STATES DISTRICT COURT**

10            **SOUTHERN DISTRICT OF CALIFORNIA**

11  CLIFFORD J. BOURGEOIS,                  | Case No. 3:15-cv-1655-GPC-BLM

12              Plaintiff,                  | (Honorable Gonzalo P. Curiel)

13      vs.                                 | **MEMORANDUM OF POINTS
                                            | AND AUTHORITIES IN
14  OCWEN LOAN SERVICING, LLC, et           | SUPPORT OF MOTION TO
    al.,                                    | DISMISS PLAINTIFF'S FIRST
15                                          | AMENDED COMPLAINT
                Defendants.                 |
16                                          | Hearing Date:  January 22, 2016
                                            | Hearing Time:  1:30 p.m.
17                                          | Courtroom:  2D

18                                          | Complaint Filed:  7/24/15

19

20

21

22

23

24

25

26

27

28

# **<u>TABLE OF CONTENTS</u>**

**Page**

I.   INTRODUCTION ............................................................................... 1

II.  STANDARDS FOR MOTIONS TO DISMISS ............................................. 2

III. THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED
WITHOUT LEAVE TO AMEND ........................................................... 2

    A.   Summary of Factual Allegations ........................................... 3

    B.   Plaintiff's FDCPA Claim Should Be Dismissed Without Leave
To Amend ......................................................................... 4

    1.   Plaintiff's Section 1692g(b) Is Fatally Flawed For Several
Different Reasons .............................................................. 5

    2.   Plaintiff's Purported Claim Against Ocwen and Tammy Versluis
Under FDCPA Section 1692e(2)(a) Fails To State A Claim ............... 12

    3.   Plaintiff's Purported Claim Against Western Progressive Under
FDCPA Sections 1692e(8) and 1692c(b) Fails As A Matter of
Law; As Does Plaintiff's Claim That Ocwen Violated Section
1692e(8) ......................................................................... 15

    C.   The Rosenthal Act Should Be Dismissed Without Leave To
Amend ............................................................................. 17

    D.   The FCRA Claim Should Be Dismissed Without Leave To
Amend ............................................................................. 17

IV.  CONCLUSION ................................................................................ 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Ass'n of Naturopathic Physicians v. Hayhurst*,
227 F.3d 1104 (9th Cir. 2000) ................................................................... 2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................... 2, 7, 10, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................ 7, 9, 10, 12

*Bermudez v. Goldman Russell, P.C.*,
2013 WL 140521 (D.N.J 2013) ............................................................ 6

*Chavez v. Access Capital Resources, Inc.*,
2014 WL 27816876 (E.D. Cal. 2014) ......................................... 5, 6, 7

*Clark v. Capital Credit & Collection Servs., Inc.*,
460 F.3d 1162 (9th Cir. 2006) ............................................................ 5

*Cochran v. Bank of New York Mellon Trust, N.A.*,
2015 WL 4573890 (C.D. Cal. 2015) .................................................... 8

*Conservation Force v. Salazar*,
646 F.3d 1240 (9th Cir. 2011) ............................................................ 2

*Kilcullen v. Select Portfolio Servicing, Inc.*,
2012 WL 1667150 (S.D. Cal. 2012) ................................................... 13

*Reese v. BP Exploration (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ............................................................ 2

*Rosenau v. Unifund Corp.*,
539 F.3d 218 (3d Cir. 2008) ............................................................ 10

*Schlegel v. Wells Fargo Bank, N.A.*,
720 F.3d 1204 (9th Cir. 2013) .................................................. 5, 6, 7, 8

*Strand v. Diversified Collection Serv., Inc.*,
380 F.3d 316 (8th Cir. 2004) ............................................................ 10

ii

*Tapang v. Wells Fargo Bank, N.A.*,
    2012 WL 3778965 (N.D. Cal. 2012) ........................................................................ 8

*Telesaurus VPC, LLC v. Power*,
    623 F.3d 998 (9th Cir.2010) .................................................................................... 2

*Wang v. Asset Acceptance, LLC*,
    2010 WL2985503, *3 (N.D. Cal. 2010) ............................................................... 12

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In dismissing plaintiff's prior complaint, this Court indicated that there were serious deficiencies in the claims purportedly brought by Clifford J. Bourgeois ("plaintiff").  Of most fundamental concern was that plaintiff failed to "provide sufficient facts concerning this alleged debt" and that plaintiff had failed to "provide sufficient facts surrounding the [alleged] failure of Defendants to 'validate' the alleged debt."  Dkt. 14 at 7:8-9; 8:12-13.

In essence, plaintiff again offers no real substance to his years-long attempt to escape all liability for a loan he does not deny taking out.  Plaintiff does, however, provide a plethora of correspondence which he attaches to his amended complaint. This correspondence, which now forms part of his complaint, shows beyond dispute that plaintiff has no valid claim against any of the moving defendants.

The amended complaint shows not just that plaintiff has attempted to abuse the consumer protections afforded to borrowers in the Fair Debt Collection Practices Act, but that this lawsuit is an improper attempt to burden and harass even the individuals who tried to work with him to find out what his real issues were.  With the First Amended Complaint and the correspondence attached, plaintiff has pled himself out of a meritless lawsuit.

"A district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,… or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies."  *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  Because plaintiff has been given leave to amend already to try and state a claim – and it is now clear that he cannot – moving defendants respectfully ask that the motion to dismiss be granted without leave to amend.

## II.   STANDARDS FOR MOTIONS TO DISMISS

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible only when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.   THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

As the Ninth Circuit has emphasized, "a pro se litigant is not excused from knowing the most basic pleading requirements." *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107-08 (9th Cir. 2000).  As detailed below, plaintiff's complaint fails to allege valid causes of action against Ocwen Loan Servicing, LLC ("Ocwen"), Western Progressive, LLC ("Western Progressive"), Ahmad Ansari ("Ansari"), Amit Mishra ("Mishra") and Tammy Versluis ("Versluis") (together, "Moving Defendants").  The complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted as it does not meet the most minimum pleading standards.

Plaintiff again attempts to state claims under the Fair Debt Collection Practices Act (the "FDCPA") and California's Rosenthal Act against all Moving Defendants.  He attempts to state a claim under the Fair Credit Reporting Act

1  ("FCRA") against Ocwen only.  Each of these claims fails as a matter of law.

2  **A.     Summary of Factual Allegations**

3          Just as in plaintiff's original complaint, the Amended Complaint is rife with

4  reprints of statutory language or of general policy statements, and even a mention of

5  Abraham Lincoln.  *See* First Amended Complaint ("FAC"), ¶¶ 1-9.  When it comes

6  to facts, however, plaintiff relies on generalized statements or conclusions which are

7  never explained.

8          Plaintiff alleges that he received a letter from Ocwen on April 17, 2012 in

9  which Ocwen asked that a mortgage payment be made and reflected the balance on a

10  mortgage loan which originated in 2003.  FAC, ¶¶ 34-38.  In that letter, which

11  plaintiff attaches to his complaint as Exhibit B, Ocwen informed plaintiff (and his

12  wife) that the total due on the loan was $132,132.25.  *Id.,* ¶ 40, Ex. B, Dkt. 16-2.

13  That letter informed plaintiff that the creditor was GSAMP 2003-HE2.  *Id.*  It also

14  provided the written notification required under FDCPA Section 1692g(a) including

15  that plaintiff could dispute the validity of the debt within 30 days and that if he did

16  not do so, the debt would be presumed valid.  *Id.*

17          Plaintiff claims that he sent "Dispute/Debt Validation" letters in April 2012.

18  FAC, ¶ 40.  A review of the letter plaintiff attaches to his complaint shows

19  otherwise.  He did not write to Ocwen Loan Servicing, LLC but to another entity

20  entirely, penning a letter in which he demanded millions of dollars.  FAC, ¶ 40, Ex.

21  G, Dkt. 16-8.  Plaintiff also attaches a plethora of correspondence to his complaint

22  which will be discussed in detail below, as relevant to each claim.

23          Despite this Court's clear instruction that plaintiff had not met minimal

24  pleading standards in federal court by refusing to explain how he disputed the debt

25  and how defendants had failed to validate it, plaintiff again makes the vacant

26  allegation that the debt was never "validat[ed]" by defendants.  FAC, ¶¶ 42, 43, 67.

27  Nowhere in his complaint does plaintiff ever state *why* he claims the debt was

28

3

1    somehow "invalidated" – as to this essential fact, everyone is left to guess.

2         It is now clear that plaintiff believes he can simply walk away from his debt

3    and that the balance he sought was in fact $0.00.  Plaintiff states in a letter attached

4    to his complaint (and therefore part of his pleadings) that he wants an

5    acknowledgement from Ocwen regarding "factual evidence of the non-existence of

6    the debt, thus proving the debt invalid" and that he wanted Ocwen to reduce the

7    balance of his loan to "$0."  Ex. G, Dkt. 16-8 at pp. 2-3 of 7.

8         From these allegations, plaintiff asks the Court to enter judgment for

9    $1,000,000 in "actual damages," for attorney fees (though he is acting *in pro per*)

10   and for statutory damages against Ocwen for $75,000.  *Id.*, ¶¶ 75, 77, 79.

11   **B.    Plaintiff's FDCPA Claim Should Be Dismissed Without Leave To Amend**

12        Plaintiff attempts to sue no fewer than six defendants under the Fair Debt

13   Collection Practices Act, 15 U.S.C. § 1692-1692p (the "FDCPA.") FAC, ¶¶ 74-75.

14   The Ninth Circuit has squarely held that the *Twombly/Iqbal* requirement of pleading

15   a "plausible" claim applies fully to the FDCPA claim.  *Schlegel v. Wells Fargo Bank,*

16   *N.A.*, 720 F.3d 1204, 1208 (9th Cir. 2013) (citing *Iqbal*, 556 U.S. at 678.)  Therefore,

17   plaintiff must plead "*factual content* that allows the court to draw the reasonable

18   inference" that the FDCPA has been violated.  *Schlegel,* 720 F.3d at 1208 (emphasis

19   added.)

20        As far as can be discerned from the amended complaint, plaintiff alleges that

21   Ocwen, Amit Ansari, and Ahmad Mishra violated Section 1692g(b) of the FDCPA.

22   FAC, ¶¶ 55-59, 63-65.  He claims that Western Progressive violated Section

23   1692c(b) and and that Ocwen and Western Progressive violated Section 1692e(8).

24   *Id.,* ¶¶ 54, 66.  Plaintiff also alleges that Tammy Versluis and Ocwen violated

25   Section 1692e(2)(A).  *Id.,* ¶¶ 62, 64.  For these violations, plaintiff claims that he

26   entitled to $1,000,000 in damages.  *Id.,* ¶ 75.  As to each of the Moving Defendants,

27   plaintiff's FDCPA fails again.  Moreover, given what details plaintiff has added to

28

his amended complaint, it is clear that plaintiff cannot state a claim under the FDCPA.

### 1.   Plaintiff's Section 1692g(b) Is Fatally Flawed For Several Different Reasons

Plaintiff claims that defendants Ocwen, Amit Ansari, and Ahmad Mishra violated Section 1692g(b) of the FDCPA.  FAC, ¶¶ 55-59, 63-65.  This allegation fails to state a claim for several fundamental reasons, the first of which is that plaintiff did not "dispute" his debt under the provision of Section 1692g(b).

As summarized in a recent decision, Section 1692g(b) of the FDCPA "provides that if a consumer notifies the debt collector in writing that the debt is disputed, or requests the name and address of the original creditor, the debt collector shall cease collection until the debt collector obtains verification of the debt or the name and address of the original creditor and provides the same to the consumer." *Chavez v. Access Capital Resources, Inc.*, 2014 WL 27816876 at *3 (E.D. Cal. 2014).  "Congress designed the Federal Act to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Swanson v. So. Oregon Cred. Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988) (citations omitted).

However, the verification right given in Section 1692g(b) does not apply for the life of the loan and is not an ongoing remedy.  Instead, it applies only during a specific time period, specifically, "***within the thirty-day period described in [Section 1392g(a)]***."  15 U.S.C. § 1692g(b).  The 30 day period in Section 1392g(a) is the 30 day period following a debt collector's "initial" notification to the borrower of the amount of the debt, the name of the creditor, notice that the borrower can dispute the debt, notice that the debt collector will verify the debt if the debt is disputed, and notice that, if no such written dispute is received, that the loan will be presumed

5

valid.  15 U.S.C. § 1692g(a).[1]

***Plaintiff Did Not "Dispute" His Debt Under The Provisions of Section 1692g(b).***  Plaintiff's 1692g(b) claim fails for multiple reasons, the first of which is that he simply did not dispute the debt within the meaning of the statute.  Plaintiff alleges that he received a letter from Ocwen on April 17, 2012.  FAC, ¶ 39.  That letter, which is attached to the amended complaint as Exhibit B, is dated April 11, 2012 and is clearly from "Ocwen Loan Servicing, LLC," which is the entity described as the servicer of the loan at issue.  FAC, ¶ 39, Ex. B, Dkt. 16-2.  That letter advised plaintiff of the rights specified under Section 1692g(a), including the right to dispute the debt within 30 days.  *Id.*  The letter instructed plaintiff that, if he wished to do so, he should "notify us…"  *Id.*  At the bottom of the letter was given a "correspondence address" which was "Ocwen Loan Servicing, LLC, ATTN: Customer Care Center, PO Box 24738, West Palm Beach FL, 33416-4738."  *Id.*

In purporting to "dispute" the debt, plaintiff decided to do something entirely

---

[1] To see how Sections 1692g(b) and Section 1692g(a) work in tandem, both subsections of 15 U.S.C. 1692g are quoted extensively as follows, with emphasis added:  "[Section 1392g(a)]:  **Notice of debt; contents**  Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing (1)  the amount of the debt; (2)  the name of the creditor to whom the debt is owed; (3)  a statement that unless the consumer, *within thirty days after receipt of the notice*, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;(4)  a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5)  a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

[Section 1692g(b)]  **Disputed debts**  *If the consumer notifies* the debt collector in *writing within the thirty-day period described in subsection (a)* of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.  Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor.  Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

MPA ISO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
Case No. 3:15-cv-1655-GPC-BLM
3474029v2 0976671

1   different.  According to his own complaint, he did not notify "Ocwen Loan
2   Servicing, LLC" at all – he did not write to "Ocwen Loan Servicing, LLC" either at
3   its Florida address or anywhere else.  Instead, he decided to write to the CEO,
4   Ronald Faris, of another entity, "Ocwen Financial Corporation," in Atlanta, Georgia.
5   FAC, ¶ 40, Ex. G, Dkt. 16-8.

6          On its face, the letter is enough to show that plaintiff has no Section 1692g(b)
7   claim.  That statute requires that a "consumer notifies the ***debt collector***" of the
8   dispute regarding the debt.  15 U.S.C. § 1692g(b).  According to the allegations of
9   his own complaint and the exhibits that plaintiff has attached, plaintiff did not notify
10  the "debt collector," which was "Ocwen Loan Servicing, LLC" as identified as the
11  "debt collector" in the notice and an address for which was given to plaintiff.  FAC, ¶
12  39, Ex. B, Dkt. 16-2.  Instead, plaintiff wrote a letter to "Ocwen Financial Corp."
13  FAC, ¶ 40, Ex. G, Dkt. 16-8 (emphasis added.)

14         Plaintiff chose to ignore the instructions in the letter sent to him by Ocwen
15  Loan Servicing, LLC in April 2012 – which clearly instructed him on how to dispute
16  the debt.  But plaintiff decided he knew better – not only did he send the letter to
17  Ocwen Financial Corp., he also demanded that the CEO of that company pay him no
18  less than "4,230,000.00" (after performing a "fraud multiplier.")  FAC, ¶ 40, Ex. G,
19  Dkt. 16-8, at p. 6 of 7.  (The letter, for good measure, really never disputed the debt
20  in any substantive terms, instead it seems to have been a rather bizarre attempt to
21  appoint Ocwen Financial Corp. as his fiduciary and to collect millions of dollars.)
22  *See* FAC, ¶ 40, Ex. G, Dkt. 16-8, at p. 1 of 7.

23         It could not be clearer, from plaintiff's own complaint, that he has stated no
24  violation of Section 1692g(b).  That section explicitly requires that the "***debt
25  collector***" be notified of any dispute – the debt collector, as clearly specified in the
26  April 2012 letter is "Ocwen Loan Servicing, LLC" as the debt collector.  Plaintiff
27  chose instead to send his letter to Ocwen Financial Corp.  This Court has recognized

28

7

that Ocwen Financial Corp. and Ocwen Loan Servicing, LLC are different companies. *See Rampp v. Ocwen Financial Corp.*, 2012 WL 2995066, *1, n.1 (S.D. Cal., Jul. 23, 2012) (stating that Ocwen Financial Corp. is the parent of Ocwen Loan Servicing, LLC and noting that plaintiff, in the complaint, did not "set forth the theory under which the parent company would be liable for the actions of the LLC.") *See also* FAC, ¶ 20 (noting the distinction between Ocwen Financial Corp. and Ocwen Loan Servicing, LLC.)

Plaintiff refers in his amended complaint to subsequent "dispute" letters. *See, e.g.,* FAC, ¶¶ 52, 55, and FAC ¶ 62 (at Ex. U-2, Dkt. 16-37) (referring to "dispute" letters sent in May 2014, January 2015 and June 2015.)  Having failed to dispute the debt within the 30 day period prescribed by Section 1392g(b), however, plaintiff cannot resurrect the right to dispute his debt by sending a series of further letters.  As the Ninth Circuit has clearly held, for requests for verification under Section 1692g(b) to "be effective, it [must] be made within thirty days from the date" of the original notice under Section 1692g(a), which here is April 17, 2012.  *See Mahon v. Credit Bureau of Placer County,* 171 F.3d 1197, 1202-1203 (9th Cir. 1999) (validation requests submitted after 30 day window do not give rise to a violation of Section 1692g(b).); FAC, ¶ 39.  *See also Reed v. Southwest Credit Systems, LP,* 2013 WL 1966973, *4 (S.D. Tex. 2013) (right to dispute debt under Section 1692g(b) is "triggered by the debt collection notice described in [Section] 1692g(a).")

The failure of plaintiff to dispute his loan to the debt collector in 2012 is the linchpin upon which many of his other claims fail.  As plaintiff did not dispute the loan in 2012 during the applicable period, the requirements of Section 1692g(b), including the requirement that the debt collector "cease collection of the debt" were also never applicable.  Therefore, plaintiff's allegations that Ocwen and Amit Ansari violated Section 1392g(b) by (apparently) continuing collection efforts by sending him a letter in November 2014 (FAC, ¶ 55) and by sending him a letter in February

2015, (*id.,* ¶ 56) fail as a matter of law.  Plaintiff's allegations that Ocwen and/or Ahmad Mishra violated Section 1692g(b) by sending him letters in May 2015 and June 2015 (*id.,* ¶¶ 57-59, 63-65) also fail because Section 1692g(b) does not apply if the plaintiff did not dispute the debt within the meaning of the statute and within the appropriate 30 day period, which as described above, he did not.  *See Mahon,* 171 F.3d at 1202-1203.

Because, according to plaintiff's own allegations, he did not write a letter to the "debt collector" during the proper time period, which is a *sine qua non* of a violation of Section 1692g(b), all Section 1692g(b) claims (against whichever defendant) should be dismissed, as well as any claims derivative of this purported cause of action based on an allegation that plaintiff had "disputed" his debt.

**The Communications Alleged In The Complaint Do Not Fall Within The Ambit Of Section 1692g(b).**  Even if plaintiff had sent his supposed dispute letter to Ocwen Loan Servicing, LLC (which he did not), his claim would also fail because the communications alleged are not adequate to raise a Section 1692g(b) claim in any event.

To begin with, the statute requires a consumer to notify the debt collector that the "debt, or any portion thereof, is disputed…"  15 U.S.C. § 1692g(b).  As mentioned above, the letter plaintiff sent in April 2012 hardly qualifies.  FAC, ¶ 40, Ex. G, Dkt. 16-8.  Although the letter mentioned the word "dispute" here and there, it also is a seven page, undecipherable notification by plaintiff of "bailment information," a notification of fees owed to him by Ocwen Financial Corp. of $110,000 ("payable on demand"), and warning of "commercial dishonor," for which the "true bill/remedy" would be $4.23 million.  *Id.*  Plaintiff did not use this letter as a means of disputing his loan in any meaningful way.

In addition, plaintiff attaches to his complaint various correspondence which he alleges constituted collection demands.  It should be kept in mind, however, that

for the purposes of the FDCPA, only collection activities are covered.  In particular here, if plaintiff had "dispute[d]" his debt (which he did not), then not all communications are prohibited, only those that constitute "collection of the debt." 15 U.S.C. § 1692g(b).  The Ninth Circuit has particularly stated that loan workouts are not "seeking to collect the debt."  *Santoro v. CTC Foreclosure Serv*., 12 F. App'x 476, 480 (9th Cir. 2001.)  As the Seventh Circuit has stated, in a case cited by the Ninth Circuit in *Santoro*, "[a] warning that something bad might happen if payment is not kept current is not a dun, nor does it seek to collect any debt, but rather the opposite because it tries to prevent the circumstances wherein payments are missed and a real dun must be mailed."  *Bailey v. Security National Servicing Corp.,* 154 F.3d 384, 389 (7th Cir.1998.)  *See also Lucero v. Cenlar FSB,* 2015 WL 519911, *2 (W.D. Wash. 2015).

Included in the documents plaintiff relies on for his Section 1692g(b) claim are a mortgage assistance letter (FAC, ¶ 55, Ex. O-1, Dkt. 16-23), a letter simply acknowledging receipt of an inquiry (FAC, ¶ 55, Ex. O-3, Dkt. 16-25), a mortgage hardship application (FAC, ¶ 56, Ex. Q, Dkt. 16-28), a mortgage assistance resources letter (FAC, ¶ 57, Ex. R-1, Dkt. 16-29), and a letter regarding a mortgage assistance application (FAC, ¶ 58, Ex. R-2, Dkt. 16-30).  As these are not communications in collection of debt, they cannot form the basis of the Section 1692g(b) claim.  Indeed, plaintiff's theory would turn the FDCPA into a device to discourage creditors from working with consumers to modify loans.

***Plaintiff Does Not Adequately Allege That Ansari and Mishra Are Debt Collectors Under The FDCPA.***  An additional reason that plaintiff fails to state a claim is that he does not adequately allege that individual defendants Ansari or Mishra (whom he refers to by first name) are "debt collectors" under the FDCPA. As this Court stated in its ruling on the motion to dismiss plaintiff's first complaint, an allegation that merely asserts that each of the defendant is a "debt collector"

without "any additional facts" does not mean the Ninth Circuit's standard for pleading an FDCPA claim under the *Twombly/Iqbal* standard.  *See* Dkt. 14 at 5:6-10. As the Ninth Circuit has stated, a plaintiff must plead a "factual basis" to plausibly infer that a defendant is a "debt collector" under the FDCPA, which means that the plaintiff must plead facts to show that a person uses an instrumentality or interstate commerce or the mail "in any business ***the principal purpose of which is the collection of any debts…***or who ***regularly*** collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  *Schlegel,* 720 F.3d at 1208 (citing 15 U.S.C. § 1692a(6), emphasis added.)

For both Mishra and Ansari, plaintiff simply mimics the statutory language, saying that each of them "is employed by Ocwen and uses any instrumentality of interstate commerce or the mails in a business, the principal purpose of which is the collection of debts and who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  FAC, ¶¶ 24, 25.

This is the kind of formulaic pleading prohibited by the *Twombly/Iqbal* standard.  Moreover, the First Amended Complaint is devoid of any sufficient allegation that either Mishra or Ansari ever tried to collect a debt from plaintiff. Regarding Amit Mishra, he is mentioned in paragraphs 55 and 56.  The letters referred to in these paragraphs are a mortgage assistance letter and a letter simply acknowledging receipt of an inquiry.  FAC, ¶ 55, Ex. O-1, Dkt. 16-23, Ex. O-3, Dkt. 16-25.  In neither of the exhibits attached to the complaint is Mishra ever collecting a debt within the meaning of the FDCPA.  *See, e.g., Lucero,* 2015 WL 519911 at *2. Again, plaintiff's complaint is not only factually deficient, it would turn any personnel activities to *assist* consumers into a potential FDCPA claim.  (Nor is there any allegation that Mishra *principally* or *regularly* collects debts.)

Regarding Ahmad Ansari, he is mentioned in paragraphs 57, 58, 59, 63, and

65 of the amended complaint, with references to exhibits.  Two of these exhibits consist of a mortgage assistance resources letter (FAC, ¶ 57, Ex. R-1, Dkt. 16-29), and a letter regarding a mortgage assistance application (FAC, ¶ 58, Ex. R-2, Dkt. 16-30).  For the same reason as above, these allegations and exhibits simply do not consist of an allegation that Ansari was collecting a debt within the meaning of the FDCPA.  The remaining references are to letters *from Ocwen,* which reference Ansari as a "Home Retention Specialist" and as a person plaintiff could contact regarding the account or "options."  FAC, ¶¶ 59, 63, 65, Exs. R-3, V-1, W, Dkt. Nos. 16-31, 16-39, 16-41.  These letters from Ocwen do not consist of Ansari collecting a debt within the meaning of the FDCPA.  (Nor does plaintiff allege that Ansari regularly or principally collects debts.)

*This Claim Is Barred By The Statute Of Limitations.*  Finally, it should be pointed out that plaintiff alleges that his supposed "dispute" of his debt (which was deficient for all the reasons stated above) occurred in April 2012.  FAC, ¶ 40.  The FDCPA has a one year statute of limitations.  *See* 15 U.S.C. 1692k(c).  Insofar as the FDCPA claim, whether based on Section 1692g(b) or any section, can be read to allege any activities barred by the one year statute, it is subject to dismissal on that ground as well.

### 2.   Plaintiff's Purported Claim Against Ocwen and Tammy Versluis Under FDCPA Section 1692e(2)(a) Fails To State A Claim

Plaintiff also attempts to allege a claim against Ocwen and an individual in Ocwen's ombudsman's office, Tammy Versluis, under Section 1692e(2)(A) of the FDCPA.  *See* FAC, ¶¶ 62, 64.  This section states that a "debt collector" may not use "any false, deceptive, or misleading representation or means in connection with the collection of any debt [including] [t]he false representation of character, amount or legal status of any debt."  15 U.S.C. § 1692e(2)(A).

Regarding Versluis, the amended complaint only shows that she is someone

plaintiff has taken to sending abrupt and rather abusive missives to.  *See* FAC, ¶ 62, Exs. U-1 through U-3, Dkt. Nos. 16-36 through 16-38.[2]

This claim fails for several reasons.  First, there are zero factual allegations in the complaint that Tammy Versluis is either a debt collector in the process of collecting a debt from plaintiff, rather than attempting to provide him with information about his account.  *See* FAC, ¶ 62, Exs. U-1 through U-3, Dkts. 16-36 through 16-38.  Just as he does with the two other individual employee defendants, plaintiff merely mimics the language of the statute when alleging that Versluis is a debt collector.  *See* FAC, ¶ 36.  Again, this is a violation of the *Twombly/Iqbal* standard as applied to FDCPA claims by the Ninth Circuit in *Schlegel.*  720 F.3d at 1208.

Moreover, two of the exhibits referred to by plaintiff with regard to Versluis are *his letters* to Ocwen – the only specific communication from Versluis is simply a spreadsheet.  FAC, ¶ 62, Exs. U-1, Dkt. 16-36.  There is not a *single* communication referred to in the complaint which states or is open to the inference that Versluis was collecting a debt.  Thus, not only has plaintiff failed to allege that Versluis is principally or regularly engaged in debt collection, but he has failed to allege that Versluis even did so with respect to him.  *See Santoro,* 12 F. App'x at 480 (9th Cir. 2001); *Bailey,* 154 F.3d at 389;  *Lucero,* 2015 WL 519911 at *2.

Second, just as with plaintiff's original complaint, beyond plaintiff's allegation that he told Versluis what she should do to "substantiate the debt" – an allegation that is untethered to any provision of the FDCPA – plaintiff alleges no facts as to why Versluis has "falsely represented the character and amount of his debt."  FAC, ¶ 62. Just as this Court noted in dismissing plaintiff's first complaint because there was a

---

[2] As an aside, plaintiff's inference that his debt was somehow extinguished in a bankruptcy proceeding (*see* FAC, ¶ 53) is flatly contradicted by the records of the bankruptcy court which he attaches to his complaint.  As is evident even from the papers plaintiff chooses to attach, it was not any loan serviced by Ocwen which was "denied," in the bankruptcy proceeding, it was plaintiff's motion to determine final cure and a debtor's objection to a claim.  See FAC, ¶¶ 51-53, Exs. M-1 through N, Dkts. Nos. 16-18 through 16-22.

13

failure to "describe the nature of the alleged debt" and no facts to support the allegation that defendants refused to "validate" the debt, there is no factual content alleged which would allow anyone to understand how or why Versluis is liable under the statute. Dkt. 14 at 7:6-8; 8:12-13. The Ninth Circuit has stated that verification under Section 1692g(b) does not involve that much. *See Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1172-73 (9th Cir. 2006) ("verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed.") (citation omitted.) Plaintiff's attempt to require an individual employee to obey his every whim, no matter how unreasonable, should be rejected.

Regarding Ocwen's supposed violation of Section 1692e(2)(A), plaintiff alleges that he was sent a bill which indicates "2 different amounts to bring the account current..." FAC, ¶ 64, Ex. V-2, Dkt. No. 16-40. An examination of the exhibit attached to the complaint shows no such thing. It simply shows an "amount due," which includes the principal amount because the loan is in default, and a separate figure called the "reinstatement amount." *Id.*

The assertion that this is somehow a misrepresentation of the debt is fails to appreciate the fact that a borrower in California has the statutory right to "reinstate" a loan by paying the amounts of payments missed (to bring the loan current) up until five days before a foreclosure sale, but a default can lead the entire principal amount being declared due. *See* Cal. Civ. Code §2424c. There is no misrepresentation or mischaracterization shown in Exhibit V-2. Again, plaintiff's theory would penalize mortgage servicers from informing borrowers that they could avoid foreclosure sales by simply reinstating rather than paying the entire loan that has been declared in default. No claim for violation of Section 1692e(2)(A) has been stated against Ocwen.

The failure to plead sufficient facts for violation of this section against

Versluis and Ocwen is especially egregious because the Ninth Circuit requires complaints for violations of Section 1692e of the FDCPA be *material.  See Donahue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) (citing *Hahn v. Triumph Partnerships, LLC*, 557 F.3d 755, 757 (7th Cir. 2009).)  Insofar as plaintiff's FDCPA claim depends on this section of the statute, it should be dismissed without leave to amend.

### 3. Plaintiff's Purported Claim Against Western Progressive Under FDCPA Sections 1692e(8) and 1692c(b) Fails As A Matter of Law; As Does Plaintiff's Claim That Ocwen Violated Section 1692e(8)

Plaintiff also alleges that Western Progressive violated Sections 1692e(8) and Section 1692c(b) of the FDCPA.  *See* FAC, ¶ 54.  Section 1692e(8) prohibits a debt collector "in connection with the collection of any debt… [c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."  15 U.S.C. § 1692e(8).  Section 1692c(b) prohibits, with many exceptions, communications by a debt collector "in connection with the collection of any debt" with anyone other than the debtor, his or her attorney, a consumer reporting agency, the creditor, the creditor's attorney, or the debt collector's attorney.  15 U.S.C.  § 1692c(b).

These theories fail for several reasons.  First, plaintiff refers to a supposed communication to the public by Western Progressive, referring to Exhibits J-1 and J-2.  FAC, ¶ 54.  These exhibits do not exist and are not attached.  The entire theory, under both Sections 1692e(8) and 1692c(b) fails the *Twombly/Iqbal* test to begin with as no sufficient facts are alleged.

Second, the only specific exhibits to the complaint which relate in any way to Western Progressive are a notice of default recorded in July 2012 and a notice of trustee's sale recorded in November 2012.  Dkts. 16-10, 16-11.  Not only would these be barred by the FDCPA one year statute of limitations (see above), there is no

1    allegation that these statements were *known* to be false, or known to be *materially*

2    false, as required in the Ninth Circuit as required for Section 1692e.  *See Donahue,*

3    592 F.3d at 1033.

4         Third, foreclosure on a secured loan is deemed by many courts not to be debt

5    collection within the meaning of the FDCPA.  *See Hulse v. Ocwen Fed. Bank, FSB,*

6    195 F. Supp. 2d 1188 (D. Or. 2002).  Indeed, the Ninth Circuit has specifically held

7    that the act of recording a notice of foreclosure sale is not an act of debt collection

8    under the FDCPA.  *Santoro,* 12 Fed. Appx. at 480 (9th Cir. 2001) ("[The]

9    foreclosure sale notice also did not seek to collect the debt, the conduct forbidden

10   under the [FDCPA.].")  Indeed, the only two exhibits referencing Western

11   Progressive are steps legally mandated by California's foreclosure statutes, which the

12   Central District has stated cannot form the basis of an FDCPA claim.  *See Cochran*

13   *v. Bank of New York Mellon Trust,* 2015 WL 4573890, *3 (C.D. Cal. 2015)

14   (dismissing Western Progressive from FDCPA claim when only allegations related

15   to recorded required notices under California's foreclosure statutes.)[3]

16        Also thrown into the amended complaint is the allegation that Ocwen violate

17   Section 1692e(8) by reporting his loan late to a credit bureau.  FAC, ¶ 66, Ex. P-2,

18   Dkt. 16-27.  As should be obvious, plaintiff has simply not alleged under minimal

19   pleading standards, under *Twombly/Iqbal* or *Schlegel,* what was false, or known to be

20   false, or materially false as is required under Section 1692e(8).  *See Donahue,* 592

21   F.3d at 1033.  Moreover, this allegation does not even allege a communication which

22   is a debt collection.  And, as analyzed at length above, plaintiff never "disputed" his

23   debt under the FDCPA, so there was no obligation for Ocwen to report this.  And,

24   even if plaintiff is referring to some other "dispute" about the debt, the complaint is

25   simply mysterious as to what he means – as this Court's prior order indicated.

26

27   [3] Insofar as any claim against any defendant relies on the theory that the debt was "disputed," this claim fails for the

28   reasons discussed above in analyzing the Section 1392g(b) claim.

1    In sum, plaintiff has failed to state a viable FDCPA claim against any

2    defendant under any theory.  The claim should be dismissed without leave to amend.

3    **C.    The Rosenthal Act Should Be Dismissed Without Leave To Amend**

4    Like he did in his original complaint, plaintiff makes clear that his claim

5    against defendants under California's Rosenthal Act is based wholly on his claim

6    that defendants violated the FDCPA.  *See* FAC, ¶¶ 76-77.  This incorporation is

7    repeated through the complaint.  *See, e.g.*, *id.*, ¶¶ 55-59.  There is no independent

8    basis for the Rosenthal Act claim stated anywhere in the amended complaint, as this

9    court stated in its prior order dismissing this claim.  *See* Dkt. 14 at 8:17-9-1.

10   As detailed above, the fact that plaintiff's FDCPA claim fails to meet the basic

11   *Twombly/Iqbal* pleading standard and because of the numerous other deficiencies as

12   identified above, this means that plaintiff's Rosenthal Act claim fails as well.  In

13   addition, plaintiff's claim, insofar as it is based on actions which occurred in 2012

14   and 2013, are barred by the Rosenthal Act's one-year statute of limitations.  *See* Cal.

15   Civ. Code § 1788.30(f).  This claim should be dismissed without leave to amend.

16

17   **D.    The FCRA Claim Should Be Dismissed Without Leave To Amend**

18   Plaintiff's third purported cause of action, stated only against Ocwen, is based

19   upon the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").  FAC, ¶¶

20   78-79.  Plaintiff is not entirely clear which section of FCRA he claims has been

21   violated, but it seems that he relies solely upon 15 U.S.C. § 1681s-2(b) – this is the

22   only specific statute section that plaintiff identifies in his complaint.  *See* FAC, ¶¶

23   69-70.  Again, as stated in the prior motion to dismiss, that section states, in full, as

24   follows:

25          After receiving notice pursuant to section 1681i(a)(2) of

26          this title of a dispute with regard to the completeness or
            accuracy of any information provided by a person to a

27          consumer reporting agency, the person shall—

28

17

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).

Despite this Court's prior dismissal of this claim, plaintiff's pleading solves none of the problems with this claim.  *See* Dkt. 14 at 9:2-11:1.  Again, plaintiff's FCRA claim fails to meet the basic pleading standards set forth in *Twombly* and *Iqbal.*

Plaintiff again fails to allege that any of the *credit reporting agencies*, to whom he alleges he disputed the supposedly inaccurate information ever made a report *to Ocwen*.  Ocwen's responsibilities under FCRA Section 1681s-2(b) are only triggered by a credit reporting agency's notification to it of the dispute.  This was discussed at length in the last motion to dismiss.  *See Wang v. Asset Acceptance, LLC*, 2010 WL2985503, *3 (N.D. Cal. 2010) (emphasis added).

Here, plaintiff does not allege that any credit reporting agency found his

dispute to be non-frivolous or that Ocwen was notified *by any credit reporting agency* of the dispute.  As such, he has not alleged that any duties under FCRA Section 1681s-2(b) were even triggered.  Failing that allegation, the FCRA must be dismissed.  *See Kilcullen v. Select Portfolio Servicing, Inc.*, 2012 WL 1667150 (S.D. Cal. 2012) (dismissing FCRA claim under Section 1681s-2(b) where plaintiff failed to allege that furnisher of credit information received a notice from credit reporting agency).

In addition, plaintiff misconstrues the fundamental design and mechanism of FCRA Section 1681s-2(b).  Even if triggered, that section does not oblige furnishers of credit information, like Ocwen, to report anything back to the consumer.  Instead, as made clear by the extensive quotation of that section above, all of the reporting requirements from Ocwen flow to the "*consumer reporting agency*" and not to *plaintiff*.  *See* 15 U.S.C. § 1681s-2(b)(C).

Plaintiff makes only vague allegations regarding his FCRA claim.  He alleges that he obtained a credit report which did not show a dispute, that Ocwen ignored his requests for "validation and disputes" and that Ocwen has provided inaccurate information.  FAC, ¶¶ 67-70.  Plaintiff's FCRA allegations in some ways are now more abstract and vague than they were last time around.  He does not say what he means by "unverified" and "unauthenticated," he does not say what he means as to what the dispute was (and, if he is referring to his FDCPA dispute, the contention is meritless for the reasons stated above and plaintiff points to no independent requirement under FCRA regarding any dispute.)  In any event, plaintiff has failed to allege a valid FCRA claim.  This claim is subject to dismissal.

## IV.   CONCLUSION

Plaintiff's amended complaint does not serve to cure any of the deficiencies this Court found with his first complaint.  Instead, as to all Moving Defendants, the details added by plaintiff simply show that he has no claim whatsoever under the

1   FDCPA, the Rosenthal Act, or FCRA. Plaintiff has now had two opportunities to

2   show that he can state a claim and he has only proven that he has no viable claim.

3   Moving Defendants respectfully request that the First Amended Complaint be

4   dismissed without leave to amend.

5

6

7   DATED:  November 23, 2015            HINSHAW & CULBERTSON LLP

8                                             By: /s/ *Philip Barilovits*

9                                             Philip Barilovits
                                              Attorneys for Defendants
10                                            OCWEN LOAN SERVICING, LLC,
                                              WESTERN PROGRESSIVE, LLC,
11                                            AHMAD ANSARI, AMIT MISHRA,
                                              and TAMMY VERSLUIS
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28