1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| CLIFFORD J. BOURGEOIS, | CASE NO. 15cv1655-GPC(BLM) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT** |
| v. | |
| OCWEN LOAN SERVICING, LLC, et al., | |
| Defendants. | [Dkt. Nos. 17, 19.] |

16

17      Before the Court are Defendants Ocwen Loan Servicing, LLC ("Ocwen");

18  Western Progressive, LLC ("Western"); Ahmad Ansari ("Ahmad"); Amit Mishra

19  ("Amit"), and Tammy Versluis' ("Versluis") motion to dismiss the first amended

20  complaint, (Dkt. No. 19), and Defendant The Law Offices of Les Zieve's ("LOLZ")

21  motion to dismiss the first amended complaint.  (Dkt. No. 17.)  Plaintiff Clifford

22  Bourgeois ("Plaintiff"), proceeding *pro se*, filed an opposition.  (Dkt. No. 22.)  A reply

23  was filed by Defendants.  (Dkt. Nos. 23, 24.)  After a review of the briefs, the first

24  amended complaint, its attachments[1] and the applicable law, the Court GRANTS in part

25

26      [1] Generally, on a motion to dismiss the complaint, a court may not consider materials beyond the complaint.  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th
27  Cir. 2001).  However, courts may "consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of
28  judicial notice-without converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  "Materials submitted as part of the complaint are not considered 'outside' the complaint and may

1 and DENIES in part Defendants' motions to dismiss.

2                                    **Background**

3          According to the first amended complaint ("FAC"), Plaintiff and Susan

4 Bourgeois ("Susan") obtained a residential home loan located at 1280 Shari Way, El

5 Cajon, CA 92019 around April 17, 2003 in the amount of $150,000. (Dkt. No. 16,

6 FAC ¶ 34.) Chase Home Finance took over as the servicer of the loan. (Id. ¶ 35.) In

7 2011, Plaintiff requested information from Chase about a loan modification. (Id.)

8 Chase explained that if they default on the loan for three months, they could get a loan

9 modification through the Home Affordable Modification Program ("HAMP"), a federal

10 program under the U.S. Department of the Treasury. (Id. ¶¶ 22, 35.) Therefore, in

11 anticipation of getting a loan modification, Plaintiff stopped making payments and

12 default was entered as of April 2, 2011. (Id. ¶ 35.) Over several months, Chase

13 delayed the HAMP application. (Id.) Eventually, Plaintiff filed a dispute with Chase,

14 which included the validity of the principle amount and inaccuracies regarding the

15 transfer of the deed of trust. (Id. ¶ 36.) He also filed disputes with the credit reporting

16 agencies and presented many complaints with the Office of the Comptroller of the

17 Currency ("OCC"). (Id.) Chase did not provide a bill of particulars to Plaintiff or the

18 OCC. (Id.)

19          On April 13, 2011, Chase entered into a general Consent Order[2] with the OCC

20 which included its improper practices regarding residential mortgage servicing. (Id.

21 ¶ 37; Dkt. No. 16-6, FAC, Ex. E at 2.) On March 12, 2012, Chase sold/assigned the

22 servicing rights to Defendant Ocwen effective April 2, 2012. (Dkt. No. 16, FAC ¶ 38;

23 ────────────────

24 be considered" on a motion to dismiss pursuant to Federal Rule of Civil Procedure
12(b)(6). Butler v. Los Angeles County, 617 F. Supp. 2d 994, 999 (C.D. Cal. 2008)
25 (citing Lee, 250 F.3d at 688; and Hal Roach Studios, Inc. v. Richard Feiner & Co., 896
F.2d 1542, 1555 n. 19 (9th Cir. 1990) (material properly submitted as part of the
26 complaint may be considered)). Plaintiff attaches numerous documents to his
complaint and Defendant relies on these documents to support its opposition.
27

28      [2]The Consent Order is between the Department of the Treasury, Comptroller of
the Currency and JPMorgan Chase Bank, N.A. entered into in April 2011. (Dkt. No.
16-6, FAC, Ex. E.)

Dkt. No. 16-7, FAC, Ex. F.)  Ocwen knew or should have known that Chase lacked an accurate account-level paperwork and files based on the OCC's investigation and Consent Order.  (Id. ¶ 38.)

On April 17, 2012, Plaintiff received a dunning letter[3], dated April 11, 2012, from Ocwen demanding payment for an alleged debt of $139,142.25.  (Dkt. No. 16, FAC ¶ 39; Dkt. No. 16-2, FAC, Ex. B.)  On April 27, 2012, Plaintiff sent a dispute/debt validation letter to Ocwen which it received on April 30, 2012.  (Dkt. No. 16, FAC ¶ 40; Dkt. No. 16-8, FAC, Ex. G.)   Plaintiff also disputed the loan with the credit reporting agencies.   (Dkt. No. 16, FAC ¶ 41; Dkt. No. 16-9, FAC, Ex. H.)

According to the FAC, Defendants Western and LOLZ, on behalf of Ocwen, on July 27, 2012, filed into the public record a dunning letter demanding payment of an alleged past due debt in the amount of $20,147.05 for the loan and never stated that the loan was in dispute and never validated the alleged debt.  (Dkt. No. 16, FAC ¶ 42; Dkt. No. 16-10, FAC, Ex. I-1.)  Then on November 26, 2012, Western and LOLZ filed into the public record a document entitled "Notice of Trustee's Sale" which disclosed an unvalidated and disputed debt amount of $148,964.49.  (Dkt. No. 16, FAC ¶ 43; Dkt. No. 16-11, FAC, Ex. I-2.)  The FAC later alleges that LOLZ and Western, for the past 12 months continues to communicate with the public without Plaintiff's permission, in connection with the collection of the alleged debt.  (Dkt. No. 16, FAC ¶ 54.)[4]

Based on Defendants' failure to comply with the FDCPA and the Rosenthal Act, Plaintiff's ex-wife, Susan Bourgeois had to file bankruptcy on December 6, 2012 as the only way to stop Ocwen's conduct.  (Dkt. No. 16, FAC ¶ 44; Dkt. No. 16-12, FAC, Ex. J.)  On December 14, 2012, LOLZ, as Ocwen's foreclosure attorney, filed a notice of appearance in the bankruptcy case.  (Dkt. No. 16, FAC ¶ 45; Dkt. No. 16-13, FAC, Ex. K-1.)  On January 11, 2013, Plaintiff sent a dispute/debt validation letter to LOLZ and

---

[3]"A 'dunning letter' is an alternative term for a collection notice."  Welker v. Law Office of Horwitz, 626 F. Supp. 2d 1068, 1069 n.2 (S.D. Cal. 2009).

[4]In support, Plaintiff cites to Exhibits J-1 and J-2; however, in his opposition, he notes that he mistakenly cited to those exhibits instead of Exhibits I-1 and I-2.

Western.  (Dkt. No. 16, FAC ¶ 46; Dkt. No. 16-14, FAC, Ex. K-2.)  Ocwen never submitted a Proof of Claim and the Bankruptcy trustee issued his final report on February 24, 2014.  (Dkt. No. 16, FAC ¶ 47; Dkt. No. 16-15, FAC, Ex. L-1.)  On February 26, 2014, Ocwen submitted a Proof of Claim, which did not include any account-level documentation. (Dkt. No. 16, FAC ¶ 48.)  On March 11, 2014, Susan Bourgeois filed an Objection to the Claim.  (Dkt. No. 16, FAC ¶ 49; Dkt. No. 16-16, FAC, Ex. L-2.)  On March 13, 2014, Plaintiff sent another dispute/debt validation letter to Ocwen.  (Dkt. No. 16, FAC ¶ 50; Dkt. No. 16-17, FAC, Ex. L-3.)

On May 21, 2014, Nichole Glowin, an attorney at Wright, Finlay & Zak, LLP entered the bankruptcy action and filed an expanded Proof of Claim for Ocwen[5] and another alleged creditor, Wells Fargo Bank.  (Dkt. No. 16, FAC ¶ 51; Dkt. Nos. 16-18 to 16-20, FAC, Exs. M-1 to M-3.)  On May 27, 2014, Plaintiff sent a dispute/debt validation letter to Wright, Finlay and Zak and Glowin.  (Dkt. No. 16, FAC ¶ 52; Dkt. No. 16-2, FAC, Ex. M-4.)  On June 6, 2014, the bankruptcy court denied Ocwen's claim.  (Dkt. No. 16, FAC ¶ 53; Dkt. No. 16-22, FAC, Ex. N.)

Subsequently, on November 21, 2014, Defendants Ocwen and Amit sent Plaintiff a "resource" letter" to collect on the loan.  (Dkt. No. 16, FAC ¶ 55; Dkt. No. 16-23, FAC, Ex. O-1.)  In response, on January 26, 2015, Plaintiff sent another dispute/debt validation letter (correct address but not dispute ltr).  (Dkt. No. 16, FAC ¶ 55; Dkt. No. 16-24, FAC, Ex. O-2.)  On February 11, 2015, Anne Issac from Ocwen acknowledged receipt of the dispute and confirmed that Ocwen and Amit are continuing collection activity of a disputed debt.[6]  (Dkt. No. 16, FAC ¶ 55; Dkt. No. 16-25, FAC, Ex. O-3.)

On February 27, 2015, Defendants Ocwen and Amit sent Plaintiff a HAMP application for the loan.  (Dkt. No. 16 FAC ¶ 56; Dkt. No. 16-28, FAC, Ex. Q.)  The

---

[5] The Court notes that the court documents lists Nichole Glowin as counsel for Wells Fargo Bank, not Ocwen.  (Dkt. Nos. 16-18 to 16-20, FAC, Exs. M-1 to M-3.)

[6] The footer of Ocwen's letters states "[t]his communication is from a debtor collector attempting to collect a debt; any information obtained will be used for that purpose."

[15cv1655-GPC(BLM)]

cover letter clearly states that Ocwen and Amit are continuing collection activity of a disputed debt. (Dkt. No. 16, FAC ¶ 56.)  On May 12, 2015, Defendants Ocwen and Ahmad sent Plaintiff a dunning letter entitled "Mortgage Assistance Resources" where they demand that Plaintiff "make all mortgage payments when they come due." (Dkt. No. 16, FAC ¶ 57; Dkt. No. 16-29, FAC, Ex. R-1.)  The letter specifically indicated that they are continuing collection activity of a disputed debt. (Dkt. No. 16, FAC ¶ 57.)

On May 15, 2015, Defendants Ocwen and Ahmad sent Plaintiff a HAMP application where it states that they demand he "make all mortgage payments when they come due." (Dkt. No. 16, FAC ¶ 58; Dkt. No. 16-30, FAC, Ex. R-2.)  The letter also clearly states they are continuing collection activity of a disputed debt. (Dkt. No. 16, FAC ¶ 58.)  On May 20, 2015, Defendants Ocwen and Ahmad sent Plaintiff a standard dunning letter where they demand payment of $63,866.51 to bring the account current. (Dkt. No. 16, FAC ¶ 59; Dkt. No. 16-31, FAC, Ex. R-3.)  The letter states that they are continuing collection activity of a disputed debt. (Dkt. No. 16, FAC ¶ 59.)

On May 11, 2015, Plaintiff sent a complaint against Ocwen to the Consumer Financial Protection Bureau ("CFPB") and on May 28, 2015, Plaintiff emailed a complaint against Ocwen to the Department of Business Oversight ("DBO"). (Dkt. No. 16, FAC ¶¶ 60, 61.)

On June 10, 2015, Plaintiff received a response letter from Tammy.  (Dkt. No. 16, FAC ¶ 62.)  The letter contained paperwork as if Plaintiff had requested a Qualified Written Request ("QWR").  (Id.)  She included a one page spreadsheet claiming it validates the debt. (Id.; Dkt. No. 16-36, FAC, Ex. U-1.)  But the letter does not include any account-level documentation of how the beginning balance of $131,008.00 was calculated. (Dkt. No. 16, FAC ¶ 62.)  So he sent another dispute letter to Tammy contesting her results and also sent another complaint letter to the DBO to update their investigation. (Id.; Dkt. No. 16-37 to 16-38, FAC, Exs. U-2, U-3.)  Tammy falsely represented the character and amount of this debt. (Dkt. No. 16, FAC ¶ 62.)

On June 16, 2015, Defendants Ocwen and Ahmad sent Plaintiff another standard

dunning letter where they demand payment of $65,193.27 to bring the account current. (Dkt. No. 16, FAC ¶ 63; Dkt. No. 16-39, FAC, Ex. V-1.)  The letter states that the matter has been turned over to LOLZ and indicates that they are continuing collection activity of a disputed debt. (Dkt. No. 16, FAC ¶ 63.)  Also, on the same day, Ocwen sent Plaintiff a different looking standard dunning letter where it demands payment of $181,800.68 or alternatively, $63,966.51 to bring the account current. (Id. ¶ 64; Dkt. No. 16-40, Ex. V-2.) Providing two different loan amounts to bring the account current misrepresents the amount of the debt and constitutes constinuing collection activity of a disputed debt. (Dkt. No. 16, FAC ¶ 64.)

On July 23, 2015, Defendants Ocwen and Ahmad sent Plaintiff another standard dunning letter seeking payment of $66,446.53 to bring the account current, states that this matter has been turned over toe LOLZ, and states  they are continuing collection activity of a disputed debt. (Dkt. No. 16, FAC ¶ 65; Dkt. No. 16-41, FAC, Ex. W.)

As to the FCRA cause of action, the FAC alleges that in late January 2015, Plaintiff obtained a copy of his credit report showing that Ocwen had removed the dispute status of their trade line. (Dkt. No. 16, FAC ¶ 66; Dkt. No. 16-26, FAC, Ex. P-1.) The on October 31, 2015, Plaintiff obtained a "3 in 1" credit report from the three credit reporting agencies. (Dkt. No. 16, FAC ¶ 66; Dkt. No. 16-27, FAC, Ex. P-2.) Ocwen is aware of the dispute yet it failed to report the debt as disputed for at least 10 months. (Dkt. No. 16, FAC ¶ 66.)

In addition, Plaintiff alleges that Ocwen failed to reinvestigate the alleged accounts after its dispute as required by the FCRA. (Id. ¶¶ 67-70.) FCRA requires a reasonable reinvestigation on the original source of the loan. (Id. ¶ 68.) He alleges that Ocwen did not perform a reasonable reinvestigation and they knowingly and willfully continued to furnish unverified and unauthenticated information to the credit reporting agencies for the past 24 months. (Id.)

Plaintiff alleges causes of action for violations of the Fair Debt Collection Practices ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act

("RFDCPA"), California Civil Code section 1788.30b, as to all Defendants, and violations of the Federal Credit Reporting Act ("FCRA") as to Defendant Ocwen only.

**Discussion**

**A.      Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).  Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).  In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

Pro se pleadings are held to a less stringent standards than those drafted by attorneys. Haines v. Kerner, 404 U.S. 519, 521 (1972).  However, pro se litigants are

1  not excused from knowing the most basic pleading requirements." <u>American Assoc.</u>

2  <u>of Naturopathic Physicians v. Hayhurst</u>, 227 F.3d 1104, 1107 (9th Cir. 2000).

3        Where a motion to dismiss is granted, "leave to amend should be granted 'unless

4  the court determines that the allegation of other facts consistent with the challenged

5  pleading could not possibly cure the deficiency.'" <u>DeSoto v. Yellow Freight Sys., Inc.</u>,

6  957 F.2d 655, 658 (9th Cir. 1992) (quoting <u>Schreiber Distrib. Co. v. Serv-Well</u>

7  <u>Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to

8  amend would be futile, the Court may deny leave to amend.  <u>See</u> <u>Desoto</u>, 957 F.2d at

9  658; <u>Schreiber</u>, 806 F.2d at 1401.

10  **B.     Federal Fair Debt Collection Practices Act**

11        The FDCPA was enacted to "'eliminate the recurring problem of debt collectors

12  dunning the wrong person or attempting to collect debts which the consumer has

13  already paid.'" <u>Terran v. Kaplan</u>, 109 F.3d 1428, 1431 (9th Cir. 1997) (quoting

14  <u>Swanson v. Southern Oregon Credit Serv., Inc.</u>, 869 F.2d 1222, 1225 (9th Cir. 1988)).

15  The Court applies the "least sophisticated debtor" standard to allegations of violations

16  under the FDCPA.   <u>Wade v. Reg'l Credit Ass'n</u>, 87 F.3d 1098, 1100 (9th  Cir. 1996)

17  (quoting <u>Swanson</u>, 869 F.2d at 1226-27).  The objective "least sophisticated debtor"

18  standard is "lower than simply examining whether particular language would deceive

19  or mislead a reasonable debtor." <u>Terran</u>, 109 F.3d at 1431-32 (quoting <u>Swanson</u>, 869

20  F.2d at 1227).  In the Ninth Circuit, whether an initial communication violates the

21  FDCPA depends on whether it is "likely to deceive or mislead a hypothetical 'least

22  sophisticated debtors.'" <u>Id.</u> at 1431.  The standard is an objective one which "ensure[s]

23  that the FDCPA protects all consumers, the gullible as well as the shrewd . . . the

24  ignorant, the unthinking and the credulous." <u>Clark v. Capital Credit & Collection</u>

25  <u>Servs.</u>, 460 F.3d 1162, 1171 (9th Cir. 2006) (internal quotation marks and citations

26  omitted).

27        Under the FDCPA, Plaintiff alleges numerous violations of 15 U.S.C. § 1692g(b)

28  against Defendants Ocwen, Amit, and Ahmad.  (Dkt. No. 16, FAC ¶¶ 55-59, 63-65.)

He also claims violations of 15 U.S.C. § 1692c(b) and 15 U.S.C. §1692e(8) as to Defendant Western, and violations of 15 U.S.C. § 1692e(8) as to Defendant Ocwen. (Id. ¶¶ 54, 66.) Lastly, he alleges that Defendants Tammy Versluis and Ocwen violated § 1692e(2)(A). (Id. ¶¶ 62, 64.)

### 1.    15 U.S.C. § 1692g(b) as to Defendants Ocwen, Amit and Ahmad

Defendants Ocwen, Amit and Ahmad argue that Plaintiff cannot allege a § 1692g(b) violation because he did not "dispute" his debt as required under that section because he mailed the dispute letter to "Ocwen Financial Corporation" in Atlanta, Georgia, an entity entirely distinct from "Ocwen Loan Servicing LLC" located in West Palm Beach, Florida. Plaintiff opposes arguing that the letterhead of the dunning letter sent to him on April 11, 2012 lists a website, ocwen.com which he relied on to obtain the address to dispute the debt referenced in the dunning letter. Plaintiff states that the website indicates that it is owned by Ocwen Financial Corporation and Ocwen Loan Servicing LLC.

15 U.S.C. § 1692g(b) provides that

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b). Under this section, once a debtor disputes the debt within 30 days of receiving a debt collection letter, the debt collector must "obtain verification of the debt" and must cease collection of the debt until the debt collector obtains verification and mails it to the consumer. Id.; see also Clark v. Capital Credit &

1   Collection Servs., Inc., 460 F.3d 1162, 1173 n.9 (9th Cir. 2006).

2       According to the FAC, around April 17, 2012, Defendant Ocwen sent Plaintiff

3   and Susan a dunning letter seeking to collect on the mortgage loan.  (Dkt. No. 16, FAC

4   ¶ 39.)  On April 27, 2012, within the thirty day period, Plaintiff alleges that he sent a

5   dispute/debt validation letter, including a request for all paperwork and a full

6   accounting on the loan.  (Id. ¶ 40.)  Since that time, without validating the debt,

7   Defendants have sent numerous "dunning" letters to Plaintiff seeking to collect on the

8   loan violating 15 U.S.C. § 1692g(b).  (Id. ¶¶ 55-59, 63-65.)

9       The collection letter dated April 11, 2012 by Ocwen provides a

10  CORRESPONDENCE ADDRESS of Ocwen Loan Servicing, LLC located in West

11  Palm Beach, Florida at the bottom of the letter.  (Dkt. No. 16-2, FAC, Ex. B.)  At the

12  top of the letter is also Ocwen's website, WWW.OCWEN.COM.  (Id.)  The FAC

13  alleges that Ocwen Loan Servicing is a subsidiary of Ocwen Financial Corporation.

14  (Dkt. No. 16, FAC ¶ 20.)  According to Plaintiff, the Ocwen website at the time he saw

15  it revealed that Ocwen Financial Corporation and Ocwen Loan Servicing LLC are

16  related.

17      In determining whether the debt collector's dunning letter misled or confused the

18  debtor as to the address to send the dispute letter, the Court applies the "least

19  sophisticated debtor" standard.  The Court concludes that a least sophisticated debtor

20  could be confused about where a dispute letter should be sent since the correspondence

21  address and the website provide different addresses and entities.  The letter does not

22  specifically state that the dispute letter must be sent to the correspondence address.

23  Moreover, Defendant has not argued that it never received the dispute letter.

24  Accordingly, Defendants' argument fails.

25      Second, Defendants argue that even if Plaintiff sent a dispute letter to Ocwen,

26  his claim fails because the communications alleged are not adequate to raise a §

27  1692g(b) claim.  They argue that the letter merely mentions the word "dispute" here

28  and there but is a seven page, undecipherable notification by plaintiff of "bailment

information", a notification of fees owed to him by Ocwen Financial Corp of $110,00 and warning of "commercial dishonor" for which the "true bill/remedy" would be $4.23 million.  Plaintiff asserts that he sent a dispute letter on April 26, 2012 that disputed the debt and requested a full accounting of the debt. (Dkt. No. 16-8, FAC, Ex. G.)

While somewhat incomprehensible, Plaintiff's dispute letter references Ocwen's April 11, 2012 letter, quotes the FDCPA concerning disputing the debt within 30 days after receipt of notice, and states that Plaintiff disputes the claim of debt in the April 11, 2012 letter.[7] (Id.)  The letter raises other issues such as bailment/trust #12960111 and seeks remedies of over $4 million; however, despite the lack of clarity, the letter informed the debt collector that he disputes the debt.  (Id.)  The Court concludes that Plaintiff has sufficiently alleged facts that he sent a dispute letter within the 30 day period as required under § 1692g(b).

Third, Defendants argue that Plaintiff has not alleged that Defendants Amit and Ahmad are debt collectors as defined under the FDCPA.  Plaintiff claims he properly alleged that Amit and Ahmad "principally or regularly collects debts" and cites to letters they sent to him.  (Dkt. No. 16, FAC ¶¶ 24, 25, 55, 57-59.)

The Ninth Circuit has interpreted "debt collector" to mean "(1) 'any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts,' and (2) any person 'who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'"  Schlegel v. Wells Fargo Bank, N.A., 720 F.3d 1204, 1208 (9th Cir. 2013) (quoting 15 U.S.C. § 1692a(6)).  In Schlegel, the Ninth Circuit concluded that a complaint must provide a factual basis from which a court can plausibly infer that the principal purpose of the defendant's business is debt collection. Id. (allegation that debt collection was some part of the defendant's business is

---

[7] The letter states that "As I am forced, without consent, to dispute this Claim of Debt, pursuant to paragraph 4 of the offer . . . ."  (Dkt. No.16-8, FAC, Ex. G.)

1    insufficient to state a claim under the FDCPA).

2         A "formulaic recitation of the elements" of the FDCPA's definition of "debt
3    collector" is not sufficient to state claim.   <u>Macias v. Integrity Nationwide
4    Investigations, Inc.</u>, No. CV 13-623 DDP(SHx), 2013 WL 2155343, at *4 (C.D. Cal.
5    May 17, 2013); <u>see also</u> Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009) (holding "bare
6    assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements'
7    of [a] claim" are insufficient to avoid dismissal); <u>Brooks v. Citibank (South Dakota),
8    N.A.</u>, 345 Fed. Appx. 260, 262 (9th Cir. 2009) (affirming dismissal of FDCPA claim,
9    where plaintiff failed to allege facts to support conclusory allegation that defendant was
10   "debt collector")

11        Plaintiff merely cites to the statutory language stating that Defendants Amit and
12   Ahmad are "employed by Ocwen and uses any instrumentality of interstate commerce
13   or the mails in a business, the principle purpose of which is the collection of debts and
14   who regularly collects or attempts to collect . . . debts owed or due or asserted to be
15   owed or due another . . . .   Furthermore, . . . in the ordinary course of business,
16   regularly, on behalf of himself or herself or others, engages in debt collection." (Dkt.
17   No. 16, FAC ¶¶ 24, 25.) Such "formulaic recitation of the elements" are not sufficient
18   to allege that Amit and Ahmad are "debt collectors" as defined under the FDCPA. <u>See
19   Iqbal</u>, 556 U.S. at 681.

20        Plaintiff also cites to letters allegedly sent by Defendant Amit, Exhibits O-1 &
21   O-3, and sent by Defendant Ahmad, Exhibits R-1, R-2 & R-3, which are attached to the
22   complaint that demonstrate they were collecting a debt. First, Exhibit O-1 is a letter,
23   dated November 21, 2014, informing Plaintiff that Amit Mishra has been assigned as
24   his personal Relationship Manager concerning mortgage assistance. (Dkt. No. 16-23,
25   FAC, Ex. O-1.) Amit did not write the letter. Exhibit O-3 is a letter written by Plaintiff
26   to Amit. (Dkt. No. 16-24, FAC, Ex. O-2.) Lastly, Exhibit O-3 is a letter by Anne
27   Isaac, from the Office of the Consumer Ombudsman with no mention of Amit. (Dkt.
28   No. 16-25, FAC, Ex. O-3.) Exhibits O-1 and O-3 do not support Plaintiff's allegation

that Ahmad is a "debt collector." As to Defendant Ahmad, Exhibit R-1 is a letter, dated May 12, 2015, informing Plaintiff that Ahmad Ansari has been assigned as his personal Relationship Manger concerning mortgage assistance. (Dkt. No. 16-29, FAC, Ex. R-1.) Exhibit R-2 is a letter dated May 15, 2015 from Ocwen where it lists Ahmad as Plaintiff's personal Relationship Manager and provides his contact information regarding mortgage assistance. (Dkt. No. 16-30, FAC, Ex. R-2.) Exhibit R-3 is a delinquency notice letter dated May 20, 2015, where Ahmad is listed as his contact person for any inquires and submission of documents. (Dkt. No. 16-31, FAC, Ex. R-3.) None of these letters were written Ahmad and again does not support Plaintiff's allegation that Ahmad is a "debt collector." Accordingly, the Court GRANTS Defendants' motion to dismiss the claims against Defendants Amit and Ahmad with prejudice since leave to amend would be futile. See Desoto, 957 F.2d at 658.

Fourth, Defendants argue that many of the documents relied on for Plaintiff's § 1692g(b) claim cannot be a basis for a FDCPA violation as these documents do not constitute "debt collection" and cites to Santoro v. CTC Foreclosure Serv. Corp., 12 Fed. App'x 476, 480 (9th Cir. 2001). Plaintiff argues that Santoro does not apply because in that case Countrywide, the debt collector, was the original creditor who serviced the loan and was not determined by be a "debt collector" by the district court. However, the Ninth Circuit did not make a ruling on whether Countrywide was a debt collector because it held that the conduct of writing a letter suggesting a loan workout did not constitute "debt collecting" under the FDCPA. Accordingly, Santoro is relevant to this case.

In an unpublished opinion, the Ninth Circuit held that communications related to a potential loan workout are not "in connection with the collection of any debt" for purposes of § 1692c(a). Santoro v. CTC Foreclosure Serv. Corp., 12 Fed. App'x 476, 480 (9th Cir. 2001). The plaintiffs had fallen behind on their mortgage payments and were in default when the loan servicer sent them a letter explaining a variety of payment options that might be available to them. The plaintiffs asserted an FDCPA

1  claim under § 1692c(a) because they were represented by counsel at the time. The

2  Ninth Circuit concluded that the claim failed because "[a] letter suggesting loan

3  workout options is not seeking to collect the debt." Id.

4      Defendants assert that the following documents do not constitute "debt

5  collecting" and include a mortgage assistance letter, (Dkt. No. 16, FAC ¶ 55; Dkt. No.

6  16-23, FAC, Ex. O-1), a letter simply acknowledging receipt of an inquiry, (Dkt. No.

7  16, FAC ¶ 55; Dkt. No. 16-25, FAC, Ex. O-3), a mortgage assistance/hardship

8  application, (Dkt. No. 16, FAC ¶ 56; Dkt. No. 16-28, FAC, Ex. Q), a mortgage

9  assistance resources letter, (Dkt. No. 16, FAC ¶ 57; Dkt. No. 16-29, FAC, Ex. R-1), and

10  a letter regarding a borrower's request for mortgage assistance and application, (Dkt.

11  No. 16, FAC ¶ 58; Dkt. No. 16-30, FAC, Ex. R-2).

12      The Court concludes that these letters do not constitute "debt collection" activity

13  and  cannot be a basis for a FDCPA claim.  See Santoro, 12 Fed. App'x at 480.

14  However, the Court notes and Defendants do not dispute that the following documents

15  constitute debt collection activity.  (See Dkt. No. 16, FAC ¶ 59 with Dkt. No. 16-31,

16  Ex. R-3; FAC ¶ 63 with Dkt. No. 16-39, Ex. V-1; FAC ¶ 64 with Dkt. No. 16-40, Ex.

17  V-2; FAC ¶ 65 with Dkt. No. 16-41, Ex. W.)

18      Lastly, Defendants contend that the FDCPA claims are barred by the one-year

19  statute of limitations because the "dispute" occurred in April 2012. Plaintiff opposes.

20  The FDCPA has a one year statute of limitations from "the date on which the violation

21  occurs." 15 U.S.C. § 1692k(c).  Courts have held that the continuing violation doctrine

22  applies to debt collection claims.   Joseph v. J.J. Mac Intyre Companies, L.L.C., 281

23  F. Supp. 2d 1156, 1161 (N.D. Cal .2003); Komarova v. Nat'l Credit Acceptance, Inc.,

24  175 Cal. App. 4th 324, 344 (2009) (applying doctrine to Rosenthal Act).  Certain

25  prohibited acts involve repeated conduct and if there is a pattern, then the case is timely

26  if "the action is filed within one year of the most recent date on which the defendant

27  is alleged to have violated the FDCPA . . . and the entire course of conduct is at issue."

28  Joseph, 281 F. Supp. 2d at 1161.

In this case, Plaintiff appears to allege repeated conduct violating § 1692g(b) with the most recent alleged violation on July 23, 2015. (Dkt. No. 16, FAC ¶ 65.) Thus, Plaintiff has sufficiently alleged a violation within the statute of limitations.

In sum, the Court GRANTS Defendants Amit and Ahmad's motion to dismiss with prejudice. The Court GRANTS Defendant Ocwen's motion to dismiss the § 1692g(b) claim based on the mortgage assistance letter, (Dkt. No. 16, FAC ¶ 55; Dkt. No. 16-23, FAC, Ex. O-1), the letter simply acknowledging receipt of an inquiry, (Dkt. No. 16, FAC ¶ 55; Dkt. No. 16-25, FAC, Ex. O-3), the mortgage assistance/hardship application, (Dkt. No. 16, FAC ¶ 56; Dkt. No. 16-28, FAC, Ex. Q), the mortgage assistance resources letter, (Dkt. No. 16, FAC ¶ 57; Dkt. No. 16-29, FAC, Ex. R-1), and the letter regarding a borrower's request for mortgage assistance and application, (Dkt. No. 16, FAC ¶ 58; Dkt. No. 16-30, FAC, Ex. R-2) with prejudice. The Court DENIES Defendants' motion to dismiss based on documents attached as Exhibits R-3, V-1, V-2 and Ex. W.

**2.      15 U.S.C. § 1692e(8) Violation as to Defendants Western Progressive and Ocwen and 15 U.S.C. § 1692c(b) Violation as to Defendant Western Progressive**

Defendants argue that Western Progressive, as Trustee, and who recorded the notice of default in July 2012, (Dkt. No. 16-10, FAC, Ex. I-1), and recorded the notice of trustee's sale in November 2012, (Dkt. No. 16-11, FAC, Ex. I-2) is not involved in debt collection as defined under the FDCPA. Relying on an amicus curiae brief filed by the Consumer Financial Protection Bureau ("CFPB") before the Ninth Circuit,[8] (Dkt. No. 10-2 at 4-29), Plaintiff contends that non-judicial foreclosure activity is debt collection and trustees are, in fact, debtor collectors under the FDCPA.

The FAC alleges that Western improperly filed into the public record a dunning letter demanding payment of $20,147.05 and never stated the loan was in dispute and

---

[8]<u>Vien-Phuong Thi Ho v. Recontrust Company, N.A.</u>, No. 10-56884 (9th Cir. ) filed on August 7, 2015.

1   that it also filed into the public record a "Notice of Trustee's Sale" which disclosed an

2   unvalidated and disputed debt amount due of $148,964.49. (Dkt. No. 16, FAC ¶¶ 42,

3   43, 54.) The FAC references Exhibits I-1 and I-2 which is attached to the FAC.  Exhibit

4   I-1 is a "Notice of Default and Election to Sell under Deed of Trust" dated July 26,

5   2012.  (Dkt. No. 16-10, FAC, Ex. I-1.)  Exhibit I-2 is "Notice of Trustee's Sale" dated

6   November 3, 2012.  (Dkt. No. 16-11, FAC, Ex. I-2.)  Plaintiff further alleges that

7   recently in July 9, 2015, Western dunned Plaintiff a letter for $183,974.45 stating to

8   pay the amount due or the property will be sold which is attached as Exhibit Y[9] to his

9   opposition.  In his opposition, Plaintiff also attached Exhibit Y, which is another

10  "Notice of Trustee's Sale" dated July 9, 2015. (Dkt. No. 22 at 21.)  These documents

11  were recorded with the San Diego County Recorder's Office by Western Progressive.

12       § 1692e(8) prohibits a debt collector from using "any false, deceptive or

13  misleading representation in connection with the collection of any debt" such as "(8)

14  [c]ommunicating or threatening to communicate to any person credit information which

15  is known or which should be known to be false, including the failure to communicate

16  that a disputed debt is disputed."  15 U.S.C. § 1692e(8).  In addition, 15 U.S.C. §

17  1692c(b) provides that

18       without the prior consent of the consumer given directly to the debt
         collector, or the express permission of a court of competent
19       jurisdiction, or as reasonably necessary to effectuate a postjudgment
         judicial remedy, a debt collector may not communicate, in connection

20  _____

21  [9]Exhibit Y is a Notice of Trustee's Sale dated July 9, 2015 attached to Plaintiff's
    opposition papers. (Dkt. No. 22 at 21.)   While documents attached to an opposition
22  cannot be considered on a motion to dismiss, Ritchie, 342 F.3d at 908-09, in his
    opposition, Plaintiff argues he mistakenly omitted the allegation related to Exhibit Y
23  and seeks leave to amend since this alleged violation is within the statute of limitations.
    (Dkt. No. 22, Opp. ¶¶ 24, 25.)  For purposes of a motion for leave to amend, the Court
24  considers Exhibit Y, which is a "Notice of Trustee's Sale", to determine whether an
    amendment would be futile.  See Foman v. Davis, 371 U.S. 178, 182 (1962) (courts
25  consider several factors on a motion for leave to amend such as (1) undue delay, (2)
    bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments
26  previously permitted; (4) prejudice to the opposing party; and (5) futility of
    amendment).  The Court concludes that Exhibit Y does not constitute "debt collecting"
27  activity subject to the FDCPA.  See Santoro, 12 Fed. App'x at 480.  Therefore, the
    Court declines to allow Plaintiff to amend his first amended complaint to add an
28  allegation related to Exhibit Y as it would be futile.

1
2
with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

3
15 U.S.C. § 1692c(b).

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
The "overwhelming majority" of district courts in the Ninth Circuit have held that nonjudicial foreclosures do not constitute debt collection under the FDCPA. Pratap v. Wells Fargo Bank, N.A., 63 F. Supp. 3d 1101, 1114 (N.D. Cal. 2014) (citing Ligon v. JP Morgan Chase Bank, No. C 11-2504-MEJ, 2011 WL 2550836, at *3 (N.D. Cal. June 27, 2011)); see also Amelina v. Manufacturers and Traders Trust Co., 14cv1906-WQH-NLS, 2015 WL 1138345, at *10 (S.D. Cal. Mar. 12, 2015) (citing cases). Specifically, in an unpublished opinion, the Ninth Circuit held that a notice about a pending foreclosure sale and a foreclosure sale notice does not constitute a "debt collecting" conduct. Santoro, 12 Fed. App'x at 480; see also Gonzalez v. CNA Foreclosure Serv., Inc., No. 09 CV 2034 MMA MDD, 2011 WL 2580681, at *3 (S.D. Cal. June 29, 2011) ("[T]he Court concludes CNA is not a 'debt collector' within the meaning of the FDCPA. At no time did CNA seek to collect money from Plaintiffs. Rather, CNA's notices informed Plaintiffs that if they did not take action with respect to the amounts allegedly owed to the beneficiary, Dakota Loans, Plaintiffs may lose legal rights and the Property may be subject to foreclosure. . . .[S]uch notices do not fall within the conduct prohibited by the FDCPA.").

20
21
22
23
24
Contrary to Plaintiff's argument, an amicus brief filed by the CFBP before the Ninth Circuit is not given any deference. See Edwards v. First American Corp., 798 F.3d 1172, 1179 (9th Cir. 2015) ("An agency's interpretation of the statute-when presented in an amicus brief-is not promulgated in the exercise of its formal rule-making authority, so no Chevron deference is warranted.")

25
26
27
28
Western is a trustee and recorded the notice of default, and the notice of trustee's sale and such conduct does not constitute "debt collecting." See Santoro, 12 Fed. App'x at 480. Accordingly, the Court GRANTS Western's motion to dismiss with

prejudice as to violations of 15 U.S.C. § 1692c(b), and 15 U.S.C. § 1692e(8) since leave to amend would be futile.  See Desoto, 957 F.2d at 658.[10]

As to Defendant Ocwen, Plaintiff claims that Ocwen violated § 1692e(8) by removing the dispute status on the trade lines in his updated credit report dated January 5, 2015.  (Dkt. No. 16, FAC ¶ 66; Dkt. No. 16-26, FAC Ex. P-1.)  Then on October 31, 2015, Plaintiff obtained a 3 in 1 credit report from the three major credit reporting agencies and Ocwen failed to report the debt as disputed for the past 10 months.  (Dkt. No. 16, FAC ¶ 66; Dkt. No. 16-27, FAC, Ex. P-2.)  Defendants argue that Plaintiff has not satisfied the pleading standard to allege what was false or known to be false and the allegation does not allege a debt collection communication.

Under the FDCPA, an allegation that a debt collector provided false credit reporting to the credit reporting agencies can violate § 1692e(8).  Quigley v. Verizon Wireless, No. C-11-6212 EMC, 2012 WL 1945784, at *6 (N.D. Cal. May 30, 2012) (claim that debt collector failed to report to the credit reporting agencies that the debtor disputed the debt was viable); Wilhelm v. Credico, Inc., 519 F.3d 416, 418 (8th Cir. 2008) (taking note of 1988 Staff Commentary on FDCPA, which states that, " '[i]f a debt collector knows that a debt is disputed by the consumer . . . and reports it to a credit bureau, he must report it as disputed' "); cf. Poulin v. The Thomas Agency, 760 F. Supp. 2d 151, 161 (D. Me 2011) (truthful credit reporting did not violate §1692e(8)).

Here, Plaintiff has alleged that Ocwen provided false credit reporting by either removing the dispute status and/or failing to report the debt as disputed even though he had disputed the debt.  Accordingly, Plaintiff has stated a cause of action against Defendant Ocwen for violations of § 1692e(8).

**3.    15 U.S.C. § 1692e(2)(A) Violation as to Defendants Ocwen and Tammy Versluis**

---

[10]Defendants also argued that the claims were barred by the statute of limitations. Because the Court finds that the alleged conduct does not fall under the FDCPA, the Court need not address whether the claims are barred by FDCPA's statute of limitations.

1    As to Versluis, Defendants argue that Plaintiff provides no allegation that
2  Versluis, who works in Ocwen's Ombudsman's office, is a debtor collector in the
3  process of collecting a debt from Plaintiff and does not properly allege she is a "debt
4  collector."  Plaintiff opposes.

5    The FAC alleges that on June 10, 2015, Plaintiff received a response letter from
6  Tammy which contained paperwork as if Plaintiff had requested a Qualified Written
7  Request ("QWR").  (Dkt. No. 16, FAC ¶ 62.)  She included a one page spreadsheet
8  claiming the document validates the debt.  (Id.)  Plaintiff claims the letter does not
9  include any account-level documentation of how the beginning balance of $131,008.00
10 was calculated.  (Id.)  So he responded and sent her a "dispute" letter informing her that
11 she should have substantiated the debt.  (Id.)  Plaintiff alleges that Versluis falsely
12 represented the character and amount of the debt in violation of § 1692e(2)(a).  (Id.)
13 In addition, as to whether Versluis is a "debt collector", the FAC asserts that "Tammy
14 is employed by OCWEN and uses any instrumentality of interstate commerce or the
15 mails in a business, the principle purpose of which is the collection of debts and who
16 regularly collects or attempts to collect, directly or indirectly, debts owed or due or
17 asserted to be owed or due another.  Therefore, Tammy is a debt collector as defined
18 by 15 U.S.C. § 1692a(6). Furthermore, Tammy, in the ordinary course of business,
19 regularly, on behalf of himself or herself or others, engages in debt collection." (Dkt.
20 No. 16, FAC ¶ 26.)

21   As the Court concluded in its prior order on Defendants' motion to dismiss,
22 Plaintiff must provide a factual basis for the Court to plausibly infer that the principal
23 purpose of the defendant's business is debt collection.  See Schlegel, 720 F.3d at 1208.
24 Here, Plaintiff has only cited to the recitation of the statute, and does not sufficiently
25 allege that Versluis is a "debt collector" subject to the provisions under the FDCPA.

26   § 1692e(2)(A) prohibits the false representation of "the character, amount, or
27 legal status of any debt."  The Ninth Circuit has held that liability under this section
28 could be predicated upon conduct that was neither knowing nor intentional.  Clark v.

1  <u>Capital Credit & Collection Servs., Inc.</u>, 460 F.3d 1162, 1176 (9th Cir. 2006).  Intent
2  becomes relevant only to determine damages.  <u>Id.</u>

3       The Court also concludes that Plaintiff has not sufficiently alleged that Versluis'
4  letter constitutes a debt collection  letter as the FAC alleges that Versluis responded
5  and attached a spreadsheet claiming it validates the debt.  Accordingly, Plaintiff's
6  allegations against Versluis fail.

7       As to Ocwen, Defendants argue that its mortgage account statement dated June
8  16, 2015 shows an "amount due" which includes the principal amount because the loan
9  is in default, and a separate amount called the "reinstatement amount" which is
10 provided pursuant to California Civil Code section 2924 *et seq.*  It contends that
11 providing two different amounts in a letter is not a false representation of the amount
12 due.

13      The FAC alleges that Ocwen sent a different looking standard looking dunning
14 letter on June 16, 2015 where it demanded payment of $181,880.68 or as an alternative,
15 $63,966.51 to bring the account current.  (Dkt. No. 16, FAC ¶ 64; Dkt. No. 16-40,
16 FAC, Ex. V-2.)  Since Ocwen addresses two different amounts to bring the account
17 current, Plaintiff claims it misrepresented the amount of the debt.  (<u>Id.</u>)

18      The Court concludes that Plaintiff has not alleged that the specific amounts due
19 are false.  He only argues that because Defendant presents two different amounts to
20 bring the account current, Ocwen is misrepresenting the amount of the debt.  He does
21 not allege that the amounts listed are false or why they are false.  Accordingly, the
22 Court GRANTS Defendants Versluis and Ocwen's motion to dismiss the FDCPA claim
23 under § 1692e(2)(A).

24 **C.    Rosenthal Fair Debt Collection Practices Act**

25      Without any detailed analysis, all Defendants argue that since Plaintiff alleges
26 that his claims are based wholly on the FDCPA claim, the Rosenthal state causes of
27 action must also fail.

28      Since Plaintiff's RFDCPA claims are based on the same allegations as the

FDCPA claims, the Court GRANTS Defendants' motion to dismiss the Rosenthal Act causes of action to the extent it granted Defendants' motion to dismiss the FDCPA claims.  See Cochran v. The Bank of New York Mellon Trust Co N.A., Case No. CV 15-3209-GHK(JCx), 2015 WL 4573890 at *5 (dismissing RFDCPA claim because the plaintiff failed to properly plead a FDCPA claim); Riggs v. Prober & Raphael, 681 F.3d 1097, 1100 (9th Cir. 2012) (the Rosenthal Act "mimics or incorporates by reference the FDCPA's requirements").  The Court also DENIES Defendants' motion to dismiss the Rosenthal Act causes of action to the extent it denied Defendants' motion to dismiss the FDCPA claims.

**D.    Federal Credit Reporting Act as to Defendant Ocwen**

Defendant Ocwen argues that Plaintiff has failed to state an FCRA claim against it.  As already previous raised in its motion to dismiss the complaint, which the Court granted, Ocwen contends Plaintiff has failed to allege that any of the credit reporting agencies, to whom he alleges he disputed the supposedly inaccurate information ever made a report to Ocwen.  Second, Defendant argues that the FCRA creates no obligation of furnishers of credit information, such as Ocwen, to report anything back to the consumer.  In his opposition, Plaintiff merely argues that Ocwen's use of a one-page spreadsheet to verify Plaintiff's dispute to the credit reporting agency is a less than reasonable investigation and a violation of 15 U.S.C. § 1681s(2)b.

The FAC cites to 15 U.S.C. § 1681s-2(b) which states,

(b) Duties of furnishers of information upon notice of dispute
(1) In general
After receiving notice pursuant to section 1681i(a)(2)[11] of this title of

---

[11]15 U.S.C. 1681i(a)(2) provides,

Prompt notice of dispute to furnisher of information.--
(A) In general.--Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency

a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall
--
(A) conduct an investigation with respect to the disputed information;
(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
(C) report the results of the investigation to the consumer reporting agency;
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
(i) modify that item of information;
(ii) delete that item of information; or
(iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b) (emphasis in original).

Under the FCRA, when an entity that furnishes information to consumer reporting agencies is notified of a "dispute with regard to the completeness of [the] information" it provides, the entity must, among other things, "(A) conduct an investigation with respect to the disputed  information," "(B) review all relevant information provided by the consumer reporting agency," and "(C) report the results of the investigation to the consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1)(A)-(C).

The FAC alleges that the FCRA requires furnishers of credit information to investigate the original source to the credit reporting agency. (Dkt. No. 16, FAC ¶ 68.) Ocwen violated § 1681s-2(b) by ignoring Plaintiff's timely demands for validation and

---

has received from the consumer or reseller.

(B) Provision of other information.--The consumer reporting agency shall promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer or the reseller after the period referred to in subparagraph (A) and before the end of the period referred to in paragraph (1)(A).

[15cv1655-GPC(BLM)]

1   disputes and avoiding its legal duty to reinvestigate the disputed information. (Id. ¶
2   69.)  Plaintiff also alleges that the FCRA requires a reasonable investigation and
3   deletion of inaccurate information from the credit reports after the consumer has
4   disputed the information. (Id. ¶ 70.)

5       The provisions of § 1681s-2(b) are not triggered until the credit reporting
6   agencies notify the furnisher that a consumer disputes information about a debt. See
7   Wang v. Asset Acceptance, No. C 09-4797 SI, 2010 WL 2985503, at *3 (N.D. Cal.
8   July 27, 2010). The duties under 1681s-2(b)(2) arises "only after the furnisher [sources
9   that provide credit information to credit reporting agencies] receives notice of dispute
10  from a CRA; notice of a dispute received directly from the consumer does not trigger
11  furnishers' duties under subsection (b)." Gorman v. Wolpoff & Abramson, LLP, 584
12  F.3d 1147, 1154 (9th Cir. 2009). (§ 1681s-2(b)(1)(A).

13      The first amended complaint does not allege that Ocwen was notified by any
14  credit reporting agency of the dispute. See Kilcullen v. Select Portfolio Serv., Inc., No.
15  11cv2657-BEN(DHB), 2012 WL 1667150, at *3 (S.D. Cal. May 10, 2012) (granting
16  Defendant's motion to dismiss because complaint did not allege facts whether
17  defendant received a notice of dispute from a credit reporting agency to trigger its
18  obligations under subsection (b)).  In fact, the FAC incorrectly alleges that the FCRA
19  applies when the consumer disputes the information to the debt collector. Accordingly,
20  the Court GRANTS Defendant Ocwen's motion to dismiss on this ground.

21      Ocwen also argues that § 1681s-2(b) does not require furnishers of credit
22  information, such as Ocwen, to report back to the consumer but all reporting
23  requirements flow to the consumer reporting agency. See 15 U.S.C. § 1681s-2(b)(2)
24  (a "person shall complete all investigations . . . to the consumer reporting agency. . .
25  ."); 15 U.S.C. § 1681s-2(b)(C) ("report the results of the investigation to the consumer
26  reporting agency").  Therefore, any allegation that Ocwen was required to provide the
27  results of any investigation to Plaintiff does not support a cause of action under the
28  FCRA.  Accordingly, the Court GRANTS Defendant Ocwen's motion to dismiss the

1 FCRA cause of action.

2 **D.    Motion to Dismiss as to Defendants LOLZ for Violations of 15 U.S.C. §**
3 **1692c(b) and 15 U.S.C § 1692e(8)**

4     LOLZ argues that the causes of action against it should be dismissed because
5 LOLZ did not violate provisions of the FDCPA and Rosenthal Act.  LOLZ argues that
6 it did not record the notice of default or the notice of trustee's sale but those documents
7 were recorded by Defendant Western. (Dkt. No. 16-10; 16-11, Exs. I-1; I-2.)  Plaintiff
8 argues that LOLZ has not explained why its address is listed on the notice of trustee's
9 sale dated November 3, 2012.

10     According to the FAC, Defendants Western and LOLZ, on behalf of Ocwen, on
11 July 27, 2012, filed into the public record a dunning letter demanding payment of an
12 alleged past due debt amount of $20,147.05 for the loan and never stated the dispute
13 status and never validated the alleged debt.  (Id. ¶ 42; Ex. 16-10, Ex. I-1.)  Then on
14 November 26, 2012, Western and LOLZ filed into the public record a document
15 entitled "Notice of Trustee's Sale" which disclosed an unvalidated and disputed debt
16 amount of $148,964.49. (Dkt. No. 16, FAC ¶ 43; Dkt. No. 16-11, Ex. I-2.)  The FAC
17 later alleges that LOLZ and Western, for the past 12 months continues to communicate
18 with the public without Plaintiff's permission, in connection with the collection of the
19 alleged debt. (Dkt. No. 16, FAC ¶ 54.)  In his opposition, Plaintiff attached Exhibit Y,
20 which is a notice of trustee's sale dated July 9, 2015.  In essence, the FAC alleges that
21 LOLZ violated 15 U.S.C. § 1692c(b) and 15 U.S.C § 1692e(8) by recording the notice
22 of default and notice of trustee's sale.

23     First, the Court agrees with LOLZ that it did not record the notice of default and
24 the notice of trustee's sale.  Both notices specifically state that it was recorded by
25 Western Progressive with an address in Atlanta, GA. (Dkt. No. 16-10, FAC, Ex. I-1;
26 Dkt. No. 16-11, FAC, Ex. I-2.)  At the end of the notice of trustee's sale, Western
27 Progressive is listed with a c/o address located in Huntington Beach, California. (Id.)
28 Plaintiff argues that this address is LOLZ's address and LOLZ and Western

[15cv1655-GPC(BLM)]

Progressive are alter-egos of each other and are one and the same.

The Court disagrees with Plaintiff.  First, Western, not LOLZ, recorded the notice of default and notice of trustee's sale.  Second, Plaintiff provides no specific factual allegations that LOLZ is the alter ego of Western.  Use of an address does not establish an alter ego relationship.  See VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc., 99 Cal. App. 4th 228, 244 (2002).  Third, even if LOLZ recorded the notice of trustee's sale, it is not a collection letter and does not fall under the FDCPA, and Plaintiff has not provided any legal authority in support.  See Santoro, 12 Fed. App'x at 480. Accordingly, the Court GRANTS LOLZ's motion to dismiss the FDCPA and Rosenthal Act claims based on the same violations against it with prejudice since leave to amend would be futile.  See Desoto, 957 F.2d at 658.[12]

**Conclusion**

Based on the above, the Court GRANTS in part and DENIES in part Defendants' motions to dismiss.  Specifically, the Court

1.    GRANTS Defendants Western, Ahmad and Amit's motion to dismiss with prejudice.

2.     GRANTS Defendant Ocwen's motion to dismiss the 15 U.S.C. § 1692g(b) claim based on the mortgage assistance letter, (Dkt. No. 16, FAC ¶ 55; Dkt. No. 16-23, FAC, Ex. O-1), the letter simply acknowledging receipt of an inquiry, (Dkt. No. 16, FAC ¶ 55; Dkt. No. 16-25, FAC, Ex. O-3), the mortgage assistance/hardship application, (Dkt. No. 16, FAC ¶ 56; Dkt. No. 16-28, FAC, Ex. Q), the mortgage assistance resources letter, (Dkt. No. 16, FAC ¶ 57; Dkt.

---

[12]Plaintiff also alleges that LOLZ failed to respond to the "dispute/debt validation" letter he sent to LOLZ around January 11, 2013.  It appears Plaintiff wrote the letter in  response to LOLZ's filing of a request for special notice in Susan's bankruptcy case.  (Dkt. No. 16, FAC ¶ 46.)  Defendant argues that it had no obligation to respond to Plaintiff's letter because it did not send a dunning letter.  A request for special notice in a bankruptcy is not a collection notice and not subject to the FDCPA. Therefore, LOLZ had no obligation to respond to the dispute/debt validation letter. Furthermore, the Court need not address the statute of limitations issue raised by Defendant.

No. 16-29, FAC, Ex. R-1), and the letter regarding a borrower's request for mortgage assistance and application, (Dkt. No. 16, FAC ¶ 58; Dkt. No. 16-30, FAC, Ex. R-2) with prejudice.  The Court DENIES Defendants' motion to dismiss the 15 U.S.C. § 1692g(b) violations based on documents attached as Exhibits R-3, V-1, V-2 and Ex. W.

3.     DENIES Ocwen's motion to dismiss the violations of 15 U.S.C. § 1692e(8).

4.     GRANTS Defendants Versluis and Ocwen's motion to dismiss the FDCPA claims under 15 U.S.C. § 1692e(2)(A).

5.     GRANTS Defendants' motion to dismiss the Rosenthal Act causes of action to the extent it granted Defendants' motion to dismiss the FDCPA claims.  The Court also DENIES Defendants' motion to dismiss the Rosenthal Act causes of action to the extent it denied Defendants' motion to dismiss the FDCPA claims.

6.     GRANTS Defendant Ocwen's motion to dismiss the FCRA claim with prejudice.

7.     GRANTS Defendant LOLZ's motion to dismiss the FDCPA and Rosenthal Act claims with prejudice.

Plaintiff is granted leave to file a second amended complaint on or before **February 26, 2016** to cure the deficiencies in the first amended complaint.  This shall be Plaintiff's final attempt to amend the complaint.  The hearing set for January 22, 2016 shall be **vacated.**

IT IS SO ORDERED.

DATED:  January 21, 2016

HON. GONZALO P. CURIEL
United States District Judge

[15cv1655-GPC(BLM)]